[Civ. No. 2295.   Fourth Appellate District.—January 25, 1940.]

J. J. McMILLAN, Respondent, v. ALFRED SIEMON, Appellant.

Alfred Siemon and Bennett Siemon for Appellant.

W. C. Dorris for Respondent.

THOMPSON, J., *pro tem.*—This is an appeal from a judgment in an election contest in which the contestant and respondent was declared elected by a majority of one vote to the office of city councilman for the sixth ward of the city of Bakersfield, and the judgment directed the issuance of a certificate of election to contestant.

The election was the regular city general election held April 11, 1939, under the Bakersfield city charter (Stats. 1915, p. 1568) which provides that such elections are subject to the general election laws of the state (id., p. 1572).

The controversy arises over the rulings of the trial court on the issue of illegal votes. Five witnesses were called by contestee who proved that they were electors otherwise qualified to vote, but who had removed from the respective precincts from which they were registered within forty days next prior to the election; that, at the time of the election, they resided in different precincts from the ones in which they registered and that they voted in the respective precincts from which they registered and in which they no longer resided. It was stipulated that it was not a special election and that none of the precincts involved had been consolidated. Contestee offered to prove that these five witnesses voted for contestant. The court rejected the offer.

The appeal presents but one main issue, namely, does an elector otherwise qualified, who has removed from and no longer resides in the precinct from which he registered, have the right to vote in such precinct at an election held within forty days after his removal when it is not a special election or when the precinct to which he has removed has not been consolidated with the precinct from which he has removed, for the purposes of the election.

The answer necessitates a construction of article II, section 1 of the Constitution of California in connection with

section 1120 of the Political Code, both of which provisions of law were presented to and adopted by the people as initiative measures at the election in November, 1930 (Stats. 1931, p. lxxxix, xci, id., p. 812, id., p. vii).

Article II, section 1, of the Constitution, after specifying the qualifications of an elector, contains the following proviso: "Provided any person duly registered as an elector in one precinct and removing therefrom to another precinct in the same county within forty days prior to an election, shall for the purpose of such election be deemed to be a resident and qualified elector of the precinct from which he so removed until after such election."

Section 1120 of the Political Code reads as follows:

"Qualifications of voters. All persons shall be entitled to vote at the elections mentioned in section 1044 of this code, who come within the terms or comply with the requirements of this section.

"1. Every person who was a qualified elector forty days immediately preceding the holding of any of the elections mentioned in section 1044 of this code, and who was registered as required by law as a qualified elector of any one of the precincts which together compose the special election or consolidated election precincts, and who continues to reside within the exterior boundaries of such special election or consolidated election precinct, until the time of the holding of the election provided for and held under said section 1044, and who voted at either one or both of the August primary or general election of the even-numbered year next preceding, shall be entitled to vote at said election, without other or additional registration, except as provided in the second paragraph of this section. All other persons, in order to be entitled to vote at any of the elections provided for in said section 1044, must be registered in the manner required by sections 1094, 1096 and 1097 of this code, as an elector of and within one of the precincts which composes the special election or consolidated election precinct wherein he claims to be entitled to vote. Such registration must be made and had in accordance with the provisions of sections 1094, 1096 and 1097 of the Political Code; provided, that such registration shall be in progress at all times except during the thirty-nine days immediately preceding any such election held under said section 1044 of this code.

"2. *Elections on or after April 1, 1932.* When any of the elections mentioned in section 1044 of this code is held on or after the first day of April of the year 1932, any person to be entitled to vote at such election must have been registered since the opening of registration for such even-numbered year on January 1, 1932, in the manner required by sections 1094, 1096 and 1097 of this code as an elector of and within one of the precincts which compose the special election or consolidated precinct wherein he claims to be entitled to vote. [Amendment approved May 12, 1931; Stats. 1931, p. 812.]''

Section 1044 referred to in section 1120 includes the election in controversy.

█ If the constitutional provision is applicable to the facts of this case, and if there is a conflict between the constitutional provision and the statutory one, then the Constitution will prevail and be controlling, regardless of the fact that the statute was adopted as an initiative measure. We cannot subscribe to appellant's suggestion that, because the two measures were adopted as initiatives at the same election, they must be considered as parts of one act and that consequently the code provision is equal in force and not subject to the currently adopted constitutional proviso. Article IV, section 1, of the Constitution, which reserved to the people the power to propose laws and amendments, known as the initiative, itself distinguishes between a law or act and a constitutional amendment. When initiative measures are voted upon by the people, they are apprised by the title and the contents, as well as by other available information, whether they are passing upon a statute or an amendment to the organic law of the state. There is no reason why a constitutional amendment should not prevail if contravened by a statute, by whatever means the statute was adopted. (*Wallace* v. *Zinman,* 200 Cal. 585, 593 [254 Pac. 946, 62 A. L. R. 1341]; *Hammond Lbr. Co.* v. *Moore,* 104 Cal. App. 528, 531 [286 Pac. 504].)

█ Appellant urges, however, that there is no conflict because the Constitution deals with the qualifications of electors for general purposes such as holding public office, signing election petitions, initiatives, recalls, serving as jurors, and similar rights which are accorded to electors generally, while section 1120 of the Political Code deals with the right of qualified electors to vote. Appellant distinguishes between

qualified electors and registered qualified electors, and argues that the constitutional proviso does not say that the person shall be deemed a registered qualified elector, but only a residential qualified elector, and it does not say he shall have the right to go back and vote in the precinct from which he moved. The constitutional proviso itself is, perhaps, the best answer to this contention, for, in order to have the benefit of its provisions, the person is required to be duly registered as an elector in one precinct and, under the conditions outlined, he is deemed to be a resident and "qualified elector" of that precinct. The term "qualified elector" is defined in section 1083 of the Political Code, which provides that a person who has certain qualifications (being the ones outlined in article II, section 1, of the Constitution) and "who has conformed to the law governing the registration of voters, shall be a qualified elector at any and all elections . . . " The term "qualified elector", as used in article II, section 1, of the Constitution, we think, is used in the same sense and means an elector who is entitled to vote. (*Bergevin* v. *Curtz,* 127 Cal. 86, 89, 90 [59 Pac. 312]; *Russell* v. *McDowell,* 83 Cal. 70, 80 [23 Pac. 183].) The draftsman who prepared the proviso in Article II, section 1, of the Constitution could scarcely have used language which would more clearly indicate a deliberate intention to give the elector who comes within its provisions the privilege of voting at the election in the precinct from which he moved.

In construing the Constitution the same rule which applies in construing statutes, contracts, and all written or spoken language obtains. In the absence of technical terms the words are presumed to have been used in their natural and ordinary meaning. (*Oakland Pav. Co.* v. *Hilton,* 69 Cal. 479, 491 [11 Pac. 3].) The provisions of the Constitution must receive a liberal, practical common-sense construction and new provisions must be considered with reference to the situation intended to be remedied or provided for. (*People* v. *Stephens,* 62 Cal. 209, 233.) The object is to give effect to the intent of the people in whom the sovereignty of the state resides. The exercise of the franchise is one of the most important functions of good citizenship, and no construction of an election law should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning.

■ Let us glance back into the history of this constitutional provision to ascertain what condition or situation gave rise to the necessity or the desire for such an amendment. Even before the adoption of the Constitution in 1879 the legislature recognized the importance of extending the privilege of voting to electors situated like the five witnesses in the instant case, and adopted, as subdivision 3 of section 1239 of the Political Code, the following provision of law: ''A person must not be held, by reason of having moved from one precinct to another, in the same county, within thirty days prior to the election, to have lost his residence in the precinct so moved from, provided he was an elector therein on the thirtieth day prior to such election.'' It is interesting to note that our Supreme Court, in the case of *Russell* v. *McDowell,* *supra,* interpreted that provision to mean that such a person was entitled to vote at such election. But this interpretation was *obiter dictum,* as it was not essential to the determination of the case. Such legislation was valid under the old Constitution which did not require any length of residence in a voting precinct as a prerequisite of the right to vote. (*Russell* v. *McDowell, supra.*) However, by the Constitution of 1879 (art. II, sec. 1) residence in his election precinct for thirty (now forty) days preceding the election was made an essential qualification to the right to vote, and in the case of *Garibaldi* v. *Zemansky,* 171 Cal. 134, 135 [152 Pac. 296], it was held that a statute adopted May 26, 1915 (Stats. 1915, p. 859) and similar in all material respects to section 1239, subdivision 3, above mentioned, was invalid as in violation of article II, section 1, of the Constitution. In 1926 the provision of the Constitution in controversy in this case was adopted as an amendment to the Constitution, and this provision was retained in a 1928 amendment and reenacted as a part of a constitutional amendment by an initative measure in 1930, except that the thirty-day period was increased to forty days. Before this amendment was adopted a person situated as the five witnesses above mentioned were situated lacked only one essential requirement to give him the right to vote, namely, residence in his precinct for the required period of thirty (now forty) days, by reason of his removal therefrom within said period. But the amendment provides that, for the purpose of the election, he shall be deemed a resident and qualified elector of the precinct from which

he so removed, and therefore he has such necessary residence for the required time and should be entitled to vote.

In further aid of its interpretation we may resort to the pamphlet distributed to the voters with the sample ballot just prior to the election at which the constitutional provision was reenacted as a part of said initiative measure. (Pol. Code, secs. 1195, 1195a; *Beneficial Loan Soc., Ltd.*, v. *Haight*, 215 Cal. 506, 515 [11 Pac. (2d) 857]; *Yosemite Lumber Co.* v. *Industrial Acc. Com.*, 187 Cal. 774, 781 [204 Pac. 226, 20 A. L. R. 994].) The material portion of the official description of the measure to be voted upon, as it appeared in said pamphlet, is as follows: "Suffrage . . . amends section 1 of article II of Constitution . . . declares person removing within forty days of election from precinct wherein registered to another precinct in same county shall for that election be deemed elector of former precinct and may vote therein; . . . " From this it would appear that the voters were informed that they were voting upon the question of the right of such persons to vote, and not upon their residential qualifications to sign petitions, serve on juries, and enjoy like privileges, as urged by appellant.

From this history it is manifest, and we are of the opinion, that the constitutional proviso involved in this case was plainly intended to, and does, apply to situations like the one that arose with respect to the five witnesses above mentioned and that they were entitled to vote in said election in the respective precincts in which they did vote.

In determining that the constitutional proviso above mentioned applies to the situation involved in the instant case we do not conclude that it nullifies the provisions of section 1120 of the Political Code, but are of the opinion that the Constitution and the statute may be reconciled. We do not agree with appellant's contention that an elector cannot go back to the precinct in which he registered and vote, if he has moved within forty days, unless the precinct of his residence has been consolidated with the precinct of his registration. Such a construction of said section 1120 would place it in direct conflict with article II, section 1, of the Constitution, and it would then be unconstitutional and void. While it may be difficult in a cursory examination of the language of the statute to harmonize it with the constitutional provision, still, when it is considered with the other sections of

the chapter of the Political Code in which it appears, its meaning is more apparent. Part 3, title 2, chapter III (secs. 1094 to 1121) relate to the subject of "Registration of Electors" and the chapter is so designated in the code. ■ The Constitution does not prohibit the enactment of laws, either by the legislature or by the people by means of the initiative, which require electors to register as a condition precedent to their exercising the privilege of voting and to provide for reasonable methods of registration. "Such provisions do not add to the qualifications required of electors, nor abridge the right of voting, but are only reasonable regulations for the purpose of ascertaining who are qualified electors, and to prevent persons who are not such electors from voting." (*Bergevin* v. *Curtz, supra,* p. 88.) Such laws, therefore, do not contravene the constitutional provisions relating to the qualifications of electors. (*People* v. *Worswick,* 142 Cal. 71, 76 [75 Pac. 663].) Said chapter III outlines in numerous sections the manner in which such registration of voters shall be accomplished. Chapter IV of the same title relates to election precincts and precinct officers and section 1133 thereof provides that the board or body charged with the duty of conducting elections may subdivide the municipality or territory in which the election is to be held into special election or consolidated election precincts for such elections, and requires such board or body to number such precincts for the purpose of such election. Said section 1133 and said section 1120 were both added by the legislature as new statutes in 1907 (Stats. 1907, p. 662) and, with the exception of a few minor changes immaterial to this issue, remained the same at the time said Bakersfield election was held. Obviously, when special election precincts or consolidated precincts are created, and an elector within the forty-day period moved from his registration precinct to another precinct within the same special election or consolidated precinct, he is still in the same voting precinct for that election, and it would be placing an unnecessary burden on such an elector and on the registration officer to require the elector to register again when his voting place is the same as if he were still residing in his original precinct. It seems logical to conclude, and we are convinced, that said section 1120 means that, under such a situation, no "other or additional registration" is required of the elector in order to vote at such an election at the

precinct polling place in the special election or consolidated election precinct, except as provided in subdivision 2 of said section, which subdivision provides that, in order to vote after April 1, 1932, he must have been registered since the opening of registration in January, 1932, which was the time fixed for beginning permanent registration under the amendment of 1930. It is just as obvious that those voters who are listed in one of the special election or consolidated precincts for a particular election, and who have not changed their residence within the forty-day period, should not have to reregister merely because their registration precinct is temporarily suspended and they are, for the purpose of such election, in a precinct temporarily created for such election only.

We take the position that the proviso contained in article II, section 1, of the Constitution applies to the facts of this case and that the questioned rulings of the trial court were correct and must be sustained; and also that section 1120 of the Political Code does not apply to this case for the reasons above stated.

The judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.