[Civ. No. 4863.   Fourth Dist.   Sept. 10, 1954.]

T. G. KENNARD et al., Respondents, v. NATE
ROSENBERG, Appellant.

Edgar B. Hervey, James Edgar Hervey and Henry F. Walker for Appellant.

Higgs, Fletcher & Mack for Respondents.

MUSSELL, J.—This is an action to recover for work, labor and services, in which the jury returned a verdict in favor of plaintiffs Kennard and Drake in the sum of $5,150 and in favor of plaintiff Wolfe in the sum of $1,200. Defendant appeals from the judgments entered on the verdicts and his principal contention is that the plaintiffs were required to be licensed by the provisions of division 3, chapter 11 of the Business and Professions Code, and not having complied therewith, were not entitled to recover compensation for their services.

Plaintiffs Kennard and Drake were both registered chemical engineers in the State of California and were in partnership, "owning the firm of Kennard and Drake Testing Laboratories and Consulting Engineers." Their business embraced industrial field and plant inspections, "trouble shooting," industrial operations, chemical and metallurgical testing of all types of material, consultation on problems in industrial plants, problems of combustion and other problems of that nature.

J. F. Drake was an experienced chemist. Plaintiff T. G. Kennard received the degree of Ph.D. from Cornell in 1929. From that year until 1931 he was instructor in chemistry on the faculty of Pomona College. From 1931 to 1942 he was part-time research fellow at Claremont Colleges and Graduate School, and from 1942 to 1944 was chief spectroscopist at the Kaiser Steel Plant at Fontana. He is an expert in air pollution and smog control, a member of several technical and scientific societies and has on several occasions appeared in court as an expert witness. Plaintiff Paul Wolfe was for 24 years with the Los Angeles Fire Department, first as a fireman, then inspector, driver and captain. During that time he spent approximately 13 years in the arson bureau and was in charge of the investigation of more than 15,000 fires. He was an instructor for eight years in the fire college maintained by the Los Angeles Fire Department and at the time he was employed by the defendant herein was retired.

It was stipulated at the trial that none of the plaintiffs, Kennard, Drake or Wolfe, had been licensed (as private detectives or investigators) as provided by sections 7520 and 7521 of the Business and Professions Code and also that none of the plaintiffs came within any of the classes to which the statute was made inapplicable by section 7522 of that code.

Defendant Rosenberg was the owner and operator of insured premises known as "The Navy Club" in San Diego. A fire occurred in the premises causing considerable damage. Defendant's attorney, Mr. Hervey, contacted Alvin Allyn, a licensed investigator, on July 13, 1952, and employed him to make an investigation to determine if in his opinion the fire was of incendiary origin. (Allyn was a party plaintiff herein and on the second day of the trial his action was settled and dismissed.)

On or about August 4, 1952, Hervey called plaintiff Wolfe on the telephone and stated that he wanted to engage his services. Wolfe informed him that he did not have a state

license as an investigator and acted only in the capacity of consultant or an expert. Wolfe accepted employment on this basis and after examining the premises, advised Hervey that the fire was not of incendiary origin. At Mr. Hervey's request he attended the preliminary hearings on the arson charge which had been filed against defendant Rosenberg and each day discussed the proceedings with counsel and suggested questions to be asked witnesses for the prosecution. The preliminary hearing was conducted in afternoon court sessions for 13 days (not consecutive) and Wolfe charged $100 a day for his services. He received a check for one day's services, $25 expenses, and defendant Rosenberg refused to pay the balance.

On August 28, 1952, defendant Rosenberg and Allyn took samples from the burned building and certain exhibits and experiments which had been made by another laboratory to Kennard and Drake and discussed the case with them. They were also furnished with a transcript of the testimony taken at a grand jury hearing in which an indictment had been returned against defendant Rosenberg. Kennard and Drake agreed to take the case and make whatever tests they saw fit which would enable them to refute the claims advanced in the transcript which they thought were incorrect. Kennard and Drake examined the premises, consulted with Mr. Hervey and the defendant, made many tests, took samples from the premises, examined photographs, conducted experiments in their laboratories and on the premises, and prepared many exhibits for use in court. They attended the preliminary hearing at the request of defendant and Hervey and each day examined the transcript of the testimony taken on the previous day. During the mornings they were "entirely at Mr. Hervey's disposal" and consulted with him at his request. They discussed the case with him during the noon hours and in the evenings, worked for Hervey and the defendant from 6:30 a. m. until 10:30 p. m. during the hearings, and guided defendant's counsel from a technical standpoint.

Plaintiff Kennard testified that while they spent 31 days in the investigation and study of the laboratory experiments, in other experiments and in the preparation of reports, they only charged defendant $100 per day for 22⅝ days; that the sums charged were reasonable for the work done in view of the particular and special conditions. On September 26, 1952, Kennard and Drake presented an invoice to defendant

Rosenberg for $2,500 for 25 days at $100 per day. Defendant Rosenberg agreed to the charges, paid $750 thereon and stated that he would pay the balance as soon as he could. However, he refused to make any further payment on the account.

Appellant first argues that the trial court erred in holding and instructing the jury that as a matter of law the provisions of division 3, chapter 11 of the Business and Professions Code were not applicable to plaintiffs in doing what they did. We do not agree with this contention.

Section 7520 of the Business and Professions Code, as amended in 1951, provides:

"No person shall engage in a business regulated by this chapter; act or assume to act as; or represent himself to be a licensee unless he is licensed under this chapter; and no person shall falsely represent that he is employed by a licensee."

Section 7521, as far as is material here, defines a private investigator as follows:

"A private investigator within the meaning of this chapter is a person other than an insurance adjuster who, for any consideration whatsoever engages in business or accepts employment to furnish, or agrees to make, or makes, any investigation for the purpose of obtaining, information with reference to: . . . the cause or responsibility for fires, libels, losses, accidents, or damage or injury to persons or to property; or securing evidence to be used before any court, board, officer, or investigating committee."

Section 7522 provides that the chapter does not apply to certain persons, societies and agencies not here involved.

The uncontradicted evidence is that none of the plaintiffs herein were engaged in the private detective business or represented themselves to be so engaged. Plaintiffs Kennard and Drake were licensed engineers and as such were authorized to make investigations in connection with that profession. (Bus. & Prof. Code, § 6701.) ▇ It seems quite clear that the private detective license law was not intended by the Legislature to place a limitation on the right of professional engineers to make chemical tests, conduct experiments and to testify in court as to the results thereof. ▇ A physician, geologist, accountant, engineer, surveyor or a handwriting expert, undoubtedly, may lawfully testify in court in connection with his findings without first procuring a license as a private detective, and, as in the instant case, a photographer may be employed to take photographs of dam-

aged premises for use in court without procuring such a license. ▮ Likewise, plaintiff Wolfe, who was hired as a consultant and expert and not as a private detective and investigator was not required to have a license as such before being permitted to testify in court as an expert.

▮▮ In *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal. 2d 796, 802 [151 P.2d 505, 157 A.L.R. 324], it is stated that the primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the Legislature must be ascertained if possible, and, when once ascertained, will be given effect even though it may not be consistent with the strict letter of the statute and that a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose and which will avoid mischief or absurd consequences.

In *California Emp. Stab. Com.* v. *Municipal Court*, 62 Cal. App.2d 781, 785 [145 P.2d 361], the court said:

''The provisions of the Constitution, or of a statute, should receive a practical, rather than a technical, construction (*Reuter* v. *Board of Supervisors*, 220 Cal. 314 [30 P.2d 417] ) ; one leading to a wise policy rather than of 'mischief or absurdity.' (*Bakkenson* v. *Superior Court*, 197 Cal. 504, 510 [241 P. 874] ; see also *McMillan* v. *Siemon*, 36 Cal.App.2d 721 [98 P.2d 790].) ''

▮ In *Bank of Alameda County* v. *McColgan*, 69 Cal. App.2d 464, 474 [159 P.2d 31], it was held:

''It is the substance rather than mere form that often governs in the construction of statutes if strict adherence to form would result in an injustice. (*Carpy* v. *Dowdell*, 129 Cal. 244 [61 P. 1126] ; *Leo* v. *Board of Medical Examiners*, 36 Cal.App.2d 490 [97 P.2d 1046] ; *Edson* v. *Southern Pac. R. R. Co.*, 144 Cal. 182 [77 P. 894].) ''

▮ It is also a well recognized rule that where a statute is susceptible of two constructions, one leading inevitably to mischief or absurdity, and the other consistent with justice, sound sense and wise policy, the former should be rejected and the latter adopted. (*Carson* v. *Lampton*, 23 Cal.App.2d 535, 538 [73 P.2d 629].)

▮ Applying the foregoing rules to the statutes here involved (Bus. & Prof. Code, §§ 7520, 7521, 7522), we conclude that it was the intent of the Legislature to require those who engage in business as private investigators and detectives to first procure a license so to do; that the statute

was enacted to regulate and control this business in the public interest; that it was not intended to apply to persons who, as experts, were employed as here, to make tests, conduct experiments and act as consultants in a case requiring the use of technical knowledge.

Our attention has not been directed to a California case involving the precise question here presented. However, in *Fox* v. *Smith,* 197 N.Y. 527 [90 N.E. 1158], the court, in construing a statute similar to section 7520 of our Business and Professions Code, held that a person who agreed to act as a private detective to watch the movements of a husband and report to the wife, for which he was promised a fee, undertook to engage in the business of private detective "for hire and reward" within the meaning of the statute. In the dissenting opinion therein (which was affirmed as the law of the case) (123 App.Div. 369 [108 N.Y.S. 181]; *Shorten* v. *Milbank,* 170 Misc. 905 [11 N.Y.S.2d 387]), it was held that the Legislature undertook to regulate and control this business in the public interest; that there was no attempt made in the statute to forbid investigation or to deny the right of an individual to investigate for himself, and the language was carefully confined to controlling a regular business and did not attempt to touch an occasional employment of an individual in the specific instance.

Appellant next contends that the court erred in instructing the jury as to computing an award in favor of Kennard and Drake. He admits that the court correctly instructed the jury that if plaintiffs Kennard and Drake entered into an oral agreement whereby the defendant agreed to pay each of them the sum of $100 a day for an eight-hour day and $100 a day for each for any court appearance, "then it becomes your duty to determine the amount of time spent by said plaintiffs Kennard and Drake for said services and apply the time so found to the daily rate for an eight hour day of $100.00 each." Appellant contends, however, that the court incorrectly instructed the jury that this was precisely the same computation to be made if defendant had agreed to pay Kennard and Drake $100 per day in the following instruction:

"If you find that the plaintiffs, Kennard and Drake, entered into an oral agreement with the defendant whereby he agreed to pay the said Kennard and Drake the sum of $100 per day for an eight-hour day plus expenses for such services, then it becomes your duty to determine the amount of time spent by each of said plaintiffs in performing the services

above referred to and apply the time so found to the daily rate for an eight-hour day of $100 for each plaintiff Kennard and Drake to determine the amount presently due, owing and unpaid from the defendant to the plaintiffs, Kennard and Drake.''

We find no prejudicial error in this instruction. The jury was instructed that it could find that the defendant agreed to pay Kennard and Drake either $100 per day for each or $100 per day for both plaintiffs. In either event they were to determine the amount of time spent to determine the number of days for which charges were to be made.

Finally, it is contended that the judgment erroneously fails to follow the verdicts in that no mention was made therein of the verdict in favor of defendant Rosenberg against plaintiffs Kennard and Drake on the issues of storage and ''stand-by'' charges. This contention is without merit. Plaintiffs were precluded from any further litigation to recover for these charges. (*Ryan* v. *Fitzgerald,* 87 Cal. 345, 347 [25 P. 546].)

In the instant case defendant and his counsel employed plaintiffs to render special technical services. These services were rendered and it is not contended that they were unsatisfactory. Defendant agreed to pay the charges made and now seeks to avoid his just obligation by resorting to the technical defense that plaintiffs were not licensed detectives or investigators. Respondents argue that even if we assume that the agreement to hire them was illegal, the rule that the courts will not lend their aid to the enforcement of an illegal agreement is here inapplicable; that the public cannot be protected because the transaction has been completed and no moral turpitude is involved; that defendant knew that plaintiff Wolfe was not a licensed detective and made no inquiry as to whether Kennard and Drake were so licensed; and that the application of the rule would permit the defendant to be unjustly enriched at the expense of plaintiffs. (Citing *Norwood* v. *Judd,* 93 Cal.App.2d 276, 289 [209 P.2d 24].) However, in view of our interpretation of the statutes involved, it is not necessary to pass upon this contention.

Judgments affirmed.

Griffin, Acting P. J., concurred.

A petition for a rehearing was denied September 29, 1954, and appellant's petition for a hearing by the Supreme Court was denied October 27, 1954.