[Civ. No. 16047. First Dist., Div. Two. Oct. 20, 1954.]

HOWARD R. TAYLOR, Appellant, v. THE BUREAU OF PRIVATE INVESTIGATORS AND ADJUSTERS, Respondent.

220

Morris M. Grupp for Appellant.

Edmund G. Brown, Attorney General, and Carl W. Wyncoop, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of the City and County of San Francisco denying appellant's petition for a writ of mandamus which sought relief from an order issued by respondent Bureau of Private Investigators and Adjusters of the State of California suspending appellant's license as a Class A Investigator for a period of 60 days.

An accusation in two counts was filed against Howard R. Taylor in November, 1952, which was served upon him together with notice of hearing thereon, which was set for January 26, 1953. Taylor requested a hearing pursuant to Government Code, section 11506, and objected to the form of the accusation on the ground that Counts 1 and 2 were so indefinite and uncertain that the accused could not identify the transactions nor prepare his defense thereto.

Section 7551, subdivision (e) [Bus. & Prof. Code], violations of which were charged, reads as follows:

"The director may suspend or revoke a license issued under this chapter if he determines that the licensee or his manager, if an individual . . . has,

"(e) Committed any act in the course of the licensee's business constituting dishonesty or fraud; or without the consent of the person in lawful possession entered any building or portion thereof."

Count 1 of the accusation alleges: "That since the issuance of the aforesaid license, and on or about the 1st day of May, 1952, while Wenona Mae Gillette was in lawful possession of the premises and building known as 5 Neila Way, Mill Valley, California, the said respondent [appellant herein], without the consent of the said Wenona Mae Gillette, forced his way into and entered the aforesaid premises, and such conduct on the part of the respondent constitutes grounds for the suspension or revocation of the aforesaid license as provided by section 7751(2) of the Business & Professions Code."

Count 2 of the accusation is as follows: "That since the issuance of the aforesaid license, and more particularly on or about the 23rd day of October, 1952, in the City and County of San Francisco, the said respondent represented himself to E. R. Corpe that he, the said respondent, represented the Travelers Insurance Company and upon such representation,

and without the consent and authority of the said E. R. Corpe, used the said name of E. R. Corpe in an endeavor to obtain information relating to certain litigation. That the said representation made by the respondent herein was false and fraudulent and known by the said respondent to be false and fraudulent, and such representations were made by the respondent for the purpose of inducing the said E. R. Corpe to act upon such representations. That said E. R. Corpe did act upon the representations made by said respondent and that such conduct on the part of the respondent, and known to him to be false and fraudulent and untrue, constitutes grounds for the suspension and revocation of the aforesaid license as provided by section 7551(e) of the Business and Professions Code.''

After hearing, the proposed decision of the hearing officer was adopted by the respondent bureau. The proposed decision found in paragraphs III and IV is as follows:

''III

''Since the issuance of the aforesaid license and on or about the 1st day of May, 1952 while Wenona Mae Gillette was in lawful possession of the premises and building known as 6 Neila Way, Mill Valley, California, the said respondent, without the consent of said Wenona Mae Gillette, forced his way into and entered the aforesaid premises.

''IV

''Since the issuance of the aforesaid license and more particularly on or about the 23rd day of October, 1952, in the City and County of San Francisco, the said respondent, represented himself to E. R. Corpe that he, the said respondent, represented the Travelers Insurance Company. On said 23d day of October, 1952, in said City and County of San Francisco, the respondent, without the consent and authority of said E. R. Corpe, used the said name of E. R. Corpe in an endeavor to obtain information relating to certain litigation. Said representations made by the said respondent herein were false and were known by said respondent to be false and were made by respondent for the purpose of inducing said E. R. Corpe and others to act upon such representations. It has not been shown that said E. R. Corpe or any other person acted upon the representations made by respondent.''

Pursuant to these findings of fact the hearing officer made a determination of issues holding that the facts constituted a violation of section 7551, subdivision (e), Business and Professions Code, in that respondent without the consent of the person in lawful possession, entered a building, and secondly, that

respondent violated said section 7551, subdivision (e), in that he committed acts in the course of his business constituting dishonesty.

Appellant contends that to justify disciplinary action, a board must determine that the conduct of a licensee has violated a condition of his license. (*Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383].) He contends that the evidence before the board and the court pertaining to his entry of Mrs. Gillette's home shows that it was not a violation of section 7551, subdivision (2), Business and Professions Code. That section permits suspension or revocation of a license if the licensee has "Committed any act in the course of the licensee's business constituting dishonesty or fraud; or without the consent of the person in lawful possession entered any building or portion thereof." ██ He says that although the two parts of the section are separated by a semicolon and are in the disjunctive by virtue of the fact that the two acts are combined in one section, it must be concluded that the act of entry must have been for the purpose of committing an act of dishonesty or fraud. Appellant does not elaborate on this argument, and the mere statement of the contention demonstrates its absurdity. The subdivision clearly expresses two conditions, for either of which a license may be revoked or suspended. This is not the only subdivision of section 7551 that contains more than one act for which a licensee may be disciplined. Subdivision (d) provides for such action if a licensee has been convicted of a felony or any crime involving moral turpitude or illegally using, carrying or possessing a dangerous weapon.

Appellant argues that he was not acting as a private investigator when he committed the act of entry into Mrs. Gillette's home, and that the act of entering without permission of the person in lawful possession must be committed in the course of the licensee's business to constitute a violation of section 7551, subdivision (e).

Appellant Taylor had been employed by an attorney for the purpose of locating a child who was being sought by her mother, Mrs. Wendt, who lived in Honduras. The father of the child, who was a brother of Mrs. Wenona Gillette of Mill Valley, California, brought the child to Mrs. Gillette's home in April, 1952. On April 10, 1952, the judge of the Superior Court of Marin County made an order for temporary custody of the child, Stephanie Margot Wendt, awarding custody to Wenona Mae Gillette. The child's mother, Mrs. Wendt, and the grandfather, Mr. Sempe, engaged a San Francisco attorney

to search for the child, and they supplied him with a list of the father's relatives in Northern California. Appellant located the child in the company of Mrs. Gillette and posing as a photographer, took pictures of the child. The mother then flew to San Francisco, arriving on April 30, 1952. Appellant, the attorney, and Mrs. Wendt met together at the attorney's office, and, according to the testimony of appellant, he was advised by the attorney to get the child back as the mother had the legal right to her custody. Appellant testified that he was unaware of the guardianship proceedings in Marin County. He drove over to Mill Valley on May 1, 1952, with Mrs. Wendt, where they saw the child in the garden with Mrs. Gillette. He then called an assistant, Mr. Formes, and the three drove up to the Gillette home at about 3:30 p. m. Mrs. Wendt remained in the car and the two men went to the door.

When Mrs. Gillette opened the door they informed her that they were camera men, that the pictures taken previously were failures and they wanted to take additional pictures. The child was standing near Mrs. Gillette just inside the door. Mrs. Gillette said she wasn't interested in pictures. Appellant knelt down, and talked to the child. He was stalling for time as the plan was to get the child to come outside so that the mother could take her.

While appellant was kneeling, he had a portion of his body within the doorway. The door was about three-quarters open. Appellant nodded his head to Formes as a signal. Formes shouted to the mother, and Mrs. Gillette started closing the door, and there was a startled look on her face. Appellant got up quickly and was inside the house when the door closed. He then told Mrs. Gillette that they were detectives and had come for the child. He picked up the little girl and walked out onto the porch. The mother ran up the walk and took the child. Appellant said that Mrs. Gillette refused to release the child, and the only statement Mrs. Gillette made was "you are not taking this child." Mrs. Gillette testified that she protested violently, and stated to appellant that she had custody papers, that she thought it was some kind of kidnapping, that she did not see the mother when she closed the door, and that only on the way down the steps with the child, did appellant inform her that the mother was with him.

Subsequently the superior court of Marin County vacated and set aside the temporary custody order of April 10, 1952.

It will be seen that the testimony of appellant himself amply supports a finding that he "without the consent of the person in lawful possession entered" a building. It is also clear

that the evidence would support a finding that he did so "in the course of the licensee's business." However, the latter finding was not made.

Respondent contends that it is not necessary that such an entry be made *in the course of the licensee's business* to constitute the offense for which a licensee may be disciplined under section 7551, subdivision (e), for the phrase "in the course of the licensee's business" is incorporated only in the definition of the first offense stated in that subsection—an act of dishonesty or fraud. ▮ The language of the statute appears not to require the act of an entry without consent to be committed in the course of the licensee's business, as is required in the case of dishonesty or fraud.

If the statute had required the act to have been done *in the course of business,* then, of course, it would be impossible to tell from the finding made whether or not the board gave credence to the evidence from which an inference could be drawn that the act was so committed.

▮ Appellant contends that the evidence shows that in entering the home of Mrs. Gillette he was engaging in the act of recovering a lost child for the parent and was clearly not acting as a private investigator. Section 7521, subdivision (a), Business and Professions Code, defines a private investigator as one who for a consideration engages in business or accepts employment to furnish, or agrees to make or makes any investigation for the purpose of obtaining information with reference to certain enumerated matters, one of which is the "whereabouts" of any person. Nothing in the section appellant contends, requires a person to be licensed to recover a lost child, and his act was that of a lay person in assisting the mother to recover the child. But as noted above, the evidence is reasonably subject to the interpretation that in going with the mother to the Gillette home, he was still acting in the capacity of a private investigator in supplying information to the mother as to the whereabouts of the child, the purpose for which he had been employed by the attorney.

In a recent case, *Kennard* v. *Rosenberg* (1954), 127 Cal. App.2d 340 [273 P.2d 839], it was said that sections 7520, 7521, 7522, Business and Professions Code, reveal an intent on the part of the Legislature to require those who engage in business as private investigators and detectives to first procure a license so to do, and that the statute was enacted in the public interest. The public has a right to expect a fairly

high degree of probity and reliability on the part of persons who are licensed to conduct investigations concerning matters which may vitally affect their interests. It is reasonable that to protect the public, investigators should not be licensed who do not hesitate to commit a trespass by entering a person's home without the consent of the person in possession and over such person's protests.

Appellant dwells at length upon the fact that appellant did not know of the custody order, that it was at any rate void, and that he was doing a legal act as the agent of the mother. It proved fortunate for appellant that the custody order was held void. The indictment against him for kidnapping was quashed. But the only question here involved is whether appellant committed the act of entry, and the finding that he did commit such an act is amply sustained even by his own testimony.

█ Appellant contends that the acts found by the respondent board to have been committed by him under the second count of the accusation do not constitute dishonesty. He points out that at the conclusion of the finding of fact in relation to this count, it is stated that ''It has not been shown that said E. R. Corpe or any other person acted upon the representations made by respondent.''

Appellant had been engaged by an attorney to investigate an accident for a client who was injured while using a jack at a filling station operated by Edmund R. Corpe, Jr. Corpe testified that appellant called on him and told him that he was investigating an accident that occurred there some months before. Corpe asked for his business card, and he produced one, saying he was from the Taylor Agency. Corpe asked whom he represented in this accident and appellant told him that it was the Travelers Insurance Company. Corpe asked what had happened to Mr. Hale who was the Travelers' investigator. Corpe said he could give out no information regarding the accident. Appellant continued to question Corpe, took out a notebook, and wanted Corpe's name and address. He was having difficulty spelling the name so the witness gave him one of his business cards which appellant retained. Corpe gave appellant no information but referred him to a Mr. Bohall, as his insurance company had requested him to refer all inquiries to that person. As soon as Corpe received Taylor's card he knew Taylor ran his own independent agency. Appellant denied having said he was the investigator for Travelers Insurance Company.

Testimony of the witness Wells developed that appellant took Corpe's card to Chanslor and Lyon, an automotive parts company, gave the card to Wells and told him that Corpe had sent him over to investigate an accident. Wells referred appellant to a Mr. Freeman at the company's district office, as all the files were located there. Appellant denied having given Corpe's card to Wells and denied having told him that he was investigating the accident on behalf of Corpe.

From the above testimony the board could conclude that appellant acting in the course of his business, represented to Corpe that he was acting on behalf of the Travelers Insurance Company, and that he used the name of Corpe in an attempt to obtain information pertaining to certain litigation, that these representations were false and known by appellant to be false, and were made with the intent to induce Corpe and others to act upon them.

Appellant contends that there is nothing in section 7551, subdivision (e), that indicates that the Legislature intended to use the word "dishonesty" as synonymous with "lie." He contends that what constitutes dishonesty often depends on the relationship between the parties, that what constitutes dishonesty between a trustee and beneficiary is quite different than dishonesty between a trustee and a stranger to the trust relationship. Appellant argues that private investigators in pursuing their business must necessarily resort to tricks and ruses, that they will get nowhere by the direct approach. Various definitions of fraud are cited (23 Am.Jur. 753, § 2; *Lightner Mining Co.* v. *Lane,* 161 Cal. 689 [120 P. 771, Ann. Cas. 1913C 1093]), and appellant says the question presented is: Did the act of appellant, assuming that everything Mr. Corpe and Mr. Wells said is correct, constitute a fraudulent act? Appellant was adjudged guilty of acts of dishonesty, however, and not of the charge of fraud.

Appellant contends that the term dishonesty or fraud as used in the statute must refer specifically to duties which an investigator owes to his own client, but that those rules do not apply to his dealings with his opponent's clients. The California Administrative Code containing the rules and regulations issued by the Bureau of Private Investigators and Adjusters provides in section 1153 thereof that dishonesty or fraud as used in section 7551 of the code includes in addition to other acts not listed therein the following: "Knowingly making a false statement *relating to evidence or information obtained in the course of employment,* or knowingly publish-

ing a slander or libel in the course of business." This regulation says nothing about *to whom* the false statement is made. That it is not limited to the investigator's clients would appear to be the more reasonable view since section 7538, subdivision (b), Business and Professions Code, provides that no licensee shall knowingly make any false report to his employer or client for whom information was being obtained. Section 7551, subdivision (e), would therefore appear designed to cover other types of situations.

In *Hogg* v. *Real Estate Comr.*, 54 Cal.App.2d 712 [129 P.2d 709], the word "dishonesty" was interpreted by the court as used in the Real Estate Act prescribing the grounds for suspension or revocation of real estate brokers' licenses. The court stated that "dishonesty" includes the element of bad faith and as defined in the dictionaries and judicial decisions means "fraud, deception, betrayal, faithlessness." Respondent cites the same case as his only authority for a definition of the term "dishonesty."

It seems clear that the form of deception practiced here by appellant, his statement that he was representing the insurance company concerned, when he was representing the party adverse to the interest of the company, and his conduct in using the business card of a party who was on the defense side of the case to represent that said party had seen him to obtain information which in reality he hoped to secure for his client, the claimant in the case, is a serious type of deception, not comparable to Sherlock Holmes' false whiskers for which appellant pleads so effectively. Section 7551, subdivision (f), provides that a license may be revoked for impersonating a law enforcement officer. Appellant notes that nothing is said about impersonating anyone else. But the acts with which appellant was charged were not impersonations. He claimed at all times to be Howard Taylor, private investigator, but he misrepresented the fact as to whose interest he was serving in an attempt to secure information. This is a type of conduct which the public should be protected against, and is a reason why such statutes are necessary "to regulate and control this business in the public interest" as was said in *Kennard* v. *Rosenberg, supra.*

There is no merit in appellant's contention of his objection raised at the hearing to the second count—that appellant was unable to determine and prepare his defense because the accusation was so indefinite and uncertain—should have been sustained. The count set forth the acts with which

appellant is charged in ordinary and concise language. (Gov. Code, § 11503; *Marlo* v. *State Board of Medical Examiners,* 112 Cal.App.2d 276 [246 P.2d 69].) ▉ Furthermore, the rules of pleading and practice applicable to courts of record do not apply to administrative proceedings. (*Camp* v. *Brock,* 75 Cal.App.2d 169, 172 [170 P.2d 702]; *Traxler* v. *Board of Medical Examiners,* 135 Cal.App. 37, 40 [26 P.2d 710].)

▉ This court will not interfere with the judgment of the court denying the writ, and in effect affirming the bureau's decision, if there is any substantial evidence in support of the judgment. (*Moran* v. *Board of Medical Examiners,* 32 Cal. 2d 301 [196 P.2d 20]; *Southern Calif. Jockey Club, Inc.* v. *California Horse Racing Board,* 36 Cal.2d 167 [223 P.2d 1].) The evidence clearly sustains the finding as to Count 2 and it also sustains the finding that the act of entry without the consent of the person in lawful possession as alleged in Count 1, was committed by appellant. It would also sustain a finding that such act was done in the course of appellant's business if that additional finding were necessary.

▉ Although administrative findings must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings. (*Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 872 [206 P.2d 355].) The findings here were sufficiently clear to allow the trial court to ascertain that facts sufficient to support the statutory offenses alleged were found to be true by the hearing officer.

We conclude that the judgment is amply supported by the findings and that the evidence likewise supports the findings.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.