129 Nev., Advance Opinion 61

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, PRIVATE INVESTIGATOR'S LICENSING BOARD, Appellant, vs. DWAYNE TATALOVICH AND TATALOVICH & ASSOCIATES, INC., Respondents. | No. 58803 <br><br> FILED <br><br> SEP 19 2013 <br><br> *[clerk signature]* <br> CHIEF DEPUTY CLERK |

Appeal from a district court order granting a petition for judicial review of a Private Investigator's Licensing Board decision. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed.*

Catherine Cortez Masto, Attorney General, and Jeffrey D. Menicucci, Deputy Attorney General, Carson City, for Appellant.

Arrascada & Arrascada, Ltd., and John L. Arrascada, Reno, for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, C.J.:

On this appeal, we consider whether investigative work undertaken for the purpose of developing and giving expert opinion testimony in a Nevada civil court case requires a Nevada private

13-27845

investigator's license. We agree with the district court that it does not and therefore affirm.

## I.

Respondent Dwayne Tatalovich was hired as an expert witness in two Nevada civil court cases. The plaintiffs in each case sought damages for injuries due to criminal acts that allegedly would not have occurred but for the property owner's negligent failure to provide adequate premises security. To prepare for the first case, Tatalovich inspected the crime scene and took measurements and photographs. For the second case, he again examined the crime scene, then reviewed all security measures and devices and reconstructed the crime. Tatalovich holds an Arizona private investigator's license. From his office in Arizona, he ran background checks on federal and state Internet databases. Tatalovich used his research to formulate his expert opinions for each case.

Based on this work by Tatalovich, appellant State of Nevada, Private Investigator's Licensing Board (Board) cited him for engaging in the business of a private investigator without a Nevada license in violation of NRS 648.060. The district court dismissed the citation. It held that Tatalovich's investigative activities were incidental to his formation of expert testimony and, as such, fell outside NRS Chapter 648's licensing scheme.[1]

---

[1]The Board also cited Tatalovich for working without a license as a security consultant under NRS 648.0155, but the district court overruled the Board because it found that Tatalovich merely gave opinion testimony and did not engage in any of the statutorily enumerated activities. Because the Board does not appeal this finding, we do not address it.

## II.

This court defers to an agency's findings of fact, as well as to its conclusions of law, where those conclusions are closely related to the agency's view of the facts. *State Indus. Ins. Sys. v. Bokelman*, 113 Nev. 1116, 1119, 946 P.2d 179, 181 (1997). However, if the petitioner's substantial rights have been prejudiced by the agency's decision and that decision rests on an error of law, exceeds its powers, or is clearly erroneous, arbitrary, capricious, or an abuse of discretion, this court may set it aside. NRS 233B.135(3); *Cable v. State ex rel. Emp'rs Ins. Co. of Nev.*, 122 Nev. 120, 126, 127 P.3d 528, 532 (2006); *Dredge v. State ex rel. Dep't of Prisons*, 105 Nev. 39, 43, 769 P.2d 56, 58-59 (1989). In construing a statute, this court considers the statutory scheme as a whole and avoids an interpretation that leads to absurd results. *City Plan Dev., Inc. v. Office of Labor Comm'r*, 121 Nev. 419, 434-35, 117 P.3d 182, 192 (2005).

Our analysis begins with the text of the licensing statutes. NRS 648.060 provides that *"no person may*: (a) *Engage in the business of private investigator*, private patrol officer, process server, repossessor, dog handler, security consultant, or polygraphic examiner or intern *or* (b) *Advertise his or her business as such*, . . . unless the person is licensed pursuant to this chapter." NRS 648.060(1) (emphasis added). "Private investigator" is defined by NRS 648.012, which reads as follows:

> [A]ny person who for any consideration engages in business or accepts employment to furnish, or agrees to make or makes any investigation for the purpose of obtaining, information with reference to:
>
> 1. The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations,

associations, transactions, acts, reputation or character of any person;

2. The location, disposition or recovery of lost or stolen property;

3. The cause or responsibility for fires, libels, losses, accidents or damage or injury to persons or to property;

4. Securing evidence to be used before any court, board, officer or investigating committee; or

5. The prevention, detection and removal of surreptitiously installed devices for eavesdropping or observation.

The question presented is whether these statutes vest the Board with the authority to regulate expert witness work. The Board maintains that the statutes encompass a wide range of activities and that expert witnesses may not personally investigate facts in Nevada unless they hold a Nevada private investigator's license. By extension, the Board argues that conducting any activity in Nevada that is investigatory in nature constitutes a private investigation for which NRS 648.060 requires a license. Tatalovich counters that, as a matter of law, expert witnesses need not hold a Nevada private investigator's license to research their cases.

The Board's reading of the licensing statutes gives them greater reach than their text and evident purpose allow. To be sure, the language "engage in the business of," NRS 648.060(1)(a); *see* NRS 648.012, is neither defined nor self-limiting. But NRS 648.060(1)(b)'s reference to "[a]dvertis[ing one's] business as such" suggests that the statute regulates those who solicit and accept employment for the purpose of providing the professional services named, not just anyone who incidentally undertakes activities also commonly performed by those professionals en route to

providing a different service—here, forensic consulting or expert opinion testimony.

Licensing requirements "protect the public safety and general welfare" of the public by restricting the activities of unlicensed or unqualified individuals who claim but do not possess the skills required of a professional in that field. NRS 648.017; *see also* NRS 622.080 (regulating an occupation or profession is for the "benefit of the public"). NRS Chapter 648 governs professionals providing a primary service to clients who either rely or act upon that service for their own safety or welfare or that of their clients, patrons, or families.[2] Given this focus, it makes sense for these professionals to be licensed and regulated by the Board. However, no similar purpose is achieved by extending the licensing requirement to expert witnesses such as Tatalovich, the validity of whose qualifications and work is tested—and contested—in court.

*Kennard v. Rosenberg*, 273 P.2d 839 (Cal. Ct. App. 1954), is on point. In *Kennard*, an attorney hired a retired fireman and two chemists—none of whom held a private investigator's license—to testify as experts in a lawsuit over the cause of a fire. *Id.* at 840. The experts inspected the site of the fire, took samples, ran chemical tests, reviewed photographs, and conducted chemical experiments. *Id.* at 840-41. The court concluded that the California private investigator's licensing statute,

---

[2]For example, a private patrol officer provides security to protect others and their property, prevent property loss or theft, or recover lost or stolen property. NRS 648.013. A person who hires a repossessor relies on the person to recover personal property subject to a security interest. NRS 648.015. And an employer relies on a security guard for personal and property protection. NRS 648.016.

which closely resembles Nevada's, did not apply to experts employed "to make tests, conduct experiments and act as consultants in a case requiring the use of technical knowledge." The object of the experts' activities was to gather information to form their opinions, not private investigation. *Id.* at 842.

The Board notes that, in *Kennard,* the experts held California licenses in their fields of specialty, just not private investigator's licenses. It characterizes Tatalovich's activities, by contrast, as pure private investigation, not subject to other licensing schemes. But this distinction does not diminish *Kennard*'s persuasiveness. In the first place, the Board ignores the fact that Tatalovich ran the background checks in Arizona, where he holds a private investigator's license.[3] Second, an expert may well need a professional license in a particular field to testify credibly—or at all—in a particular area. *See also Wright v. Las Vegas Hacienda, Inc.,* 102 Nev. 261, 720 P.2d 696 (1986) (noting that NRS 50.275 does not impose a licensing requirement on expert witnesses). But the question is whether experts must *also* have a private investigator's license to gather information needed to develop or support their testimony. It may be, as the Board argues, that the risk of illegal or unethical activities does not vanish just because it is the predicate for expert opinion testimony, as

---

[3]The Board argues that the background check effectively occurred in Nevada because it accessed information from Nevada databases. But an Internet search that utilizes a Nevada database open to anyone with appropriate access does not, by itself, subject the user to the Board's control.

opposed to more direct use.[4]  Nonetheless, work by forensic experts, even work not subject to other professional licensing requirements, is not unregulated.  It is limited by the rules of the court, the judge's approval of the expert's qualifications to provide the opinion, and the judge's determination of what testimony, if any, to allow.  *Cf. Baggerly v. CSX Transp. Inc.*, 635 S.E.2d 97, 104 (S.C. 2006) ("We refuse to endorse an interpretation of the [local] professional engineer licensing statute which has the potential of either preventing out-of-state experts from testifying in South Carolina courts or imposing the unreasonable burden of getting licensed in the State simply to be permitted to provide forensic testimony.").

The Board's reading of NRS 648.012 and NRS 648.060 would capture conduct far afield from private investigation.  For example, a journalist who searches public records for a news story on a politician could be acting as a private investigator by obtaining "information with reference to [a person's] identity, habits, conduct . . . honesty, integrity." NRS 648.012(1).[5]  Is a plumber who inspects a drain to determine whether

---

[4]The Board notes but does not develop the argument that NRS 648.012(4) refers to "[s]ecuring evidence to be used before any court, board, officer or investigating committee," as work requiring a private investigator's license.  The 2013 amendments to NRS 648.012 convince us that this subsection applies to work undertaken for the purpose of gathering direct evidence, not work undertaken by an expert witness as the basis for his or her opinion testimony. *See infra* note 6.

[5]In 2009, the Legislature conducted hearings on whether NRS Chapter 648 regulates all investigative activities, without regard to purpose or scope.  Some of the examples in the text are drawn from those hearings.  *See* Hearing on S.B. 265 Before the Assembly Comm. on Commerce and Labor, 75th Leg. (Nev., May 15, 2009) (statement of
*continued on next page . . .*

a lost wedding ring is lodged in a sink's pipe acting as a private investigator by obtaining information about "[t]he location . . . of lost . . . property"? NRS 648.012(2). What about a prospective employer who calls past employers to learn an applicant's work history? *See* NRS 648.012(1) (acting as a private investigator includes obtaining "information with reference to . . . [t]he . . . honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty . . . reputation or character of any person").

The Legislature has not endorsed the Board's expansive view of what constitutes private investigation. NRS Chapter 648 contains a growing list of exemptions. *See* NRS 648.018. And in 2013, after the Board cited Tatalovich and this litigation ensued, the Legislature amended NRS 648.012 to create a specific exception for expert witnesses who are "retained for litigation or trial . . . and who perform[ ] duties and tasks within his or her field of expertise that are necessary to form his or her opinion" related to a possible crime or tort.[6] These amendments

---

. . . *continued*

Assemblywoman Barbara E. Buckley, Member of the Assembly Committee on Commerce and Labor, indicating that "[i]t seems unbelievable that somebody looking through public records could be accused of being a private investigator"); *see also* Hearing on S.B. 265 Before the Senate Comm. on Commerce and Labor, 75th Leg. (Nev., March 23, 2009) (statement of Senator Maggie Carlton, Chair of the Senate Committee on Commerce and Labor, noting that it "was not anyone's intention" that the licensing requirement be extended to journalists investigating public records for commercial purposes).

[6]The amendment was signed on June 1, 2013, and takes effect October 1, 2013. A.B. 306, 77th Leg. (Nev. 2013). Of note, the 2013
*continued on next page . . .*

8

appear to clarify, not change, the law, correcting a "doubtful [agency] interpretation" of a controlling statute. *Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 156-57, 179 P.3d 542, 554 (2008) (internal quotations omitted); *see In re Estate of Thomas*, 116 Nev. 492, 495, 998 P.2d 560, 562 (2000) (construing amendment as clarifying a doubtful interpretation of an earlier statute).

For these reasons, we reject the Board's position. NRS 648.012 regulates those employed or acting as private investigators to protect public safety and welfare and the consumers of their services. Its licensing requirement does not apply to experts employed to give an opinion on some aspect(s) of a case where the expert witness performs duties and tasks within his or her field to verify or obtain information necessary to form the basis for the opinion testimony.

Tatalovich was hired as an expert witness, and in forming his testimony he visited the crime scenes, took photographs and measurements, examined security measures, and reconstructed events. He also ran background checks on one of the accused in order to form an opinion concerning the soundness of a hiring decision. These tasks were

---

*. . . continued*

amendments leave intact NRS 648.012's reference to "[s]ecuring evidence to be used before any court, board, officer or investigating committee," as requiring a private investigator's license. To the extent an individual works to unearth facts to be used as direct evidence, as opposed to information to be used as the basis for expert opinion testimony, NRS 648.060's licensing requirements may apply.

necessary to form the basis of his opinion testimony. And Tatalovich's Arizona license granted him access to the relevant databases for the background checks. His actions therefore fell outside the Nevada licensing requirement.

We affirm.

_____, C.J.
Pickering

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta