

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-18-1077-BKuTa |
| DEBORAH SERAP, | Bk. No. 2:17-bk-13725-ABL |
| Debtor. | |
| USHA IDNANI, | |
| Appellant, | |
| v. | **MEMORANDUM*** |
| DEBORAH SERAP, | |
| Appellee. | |

Argued and Submitted on February 21, 2019
at Las Vegas, Nevada

Filed – May 2, 2019

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

* This disposition is not appropriate for publication. Although it may be cited
for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no
precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable August B. Landis, Bankruptcy Judge, Presiding

———

Appearances:    Benjamin B. Childs argued for Appellant Dr. Usha Idnani;
Appellee Deborah Serap argued pro se.

———

Before:    BRAND, KURTZ and TAYLOR, Bankruptcy Judges.

Memorandum by Judge Brand
Dissent by Judge Taylor


**INTRODUCTION**

In this case, we must determine whether under Nevada's "one-action rule" a creditor's deed of trust is rendered void if, prior to the completion of the creditor's foreclosure sale, the creditor obtained a personal judgment against a guarantor who is unable to waive the protections of the one-action rule under state law. The bankruptcy court ruled that the creditor's lien was released and discharged once she obtained a personal judgment against the guarantor for the full amount of the debt. We agree, and we AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    The loan and guarantor action**

Prior to the petition date, the debtor, Deborah Serap, and her

husband, Earl Serap,[1] now deceased, were successor co-trustees of a revocable living trust — the Mazel Trust. Their residence (the "Property") was an asset of the Mazel Trust.

In May 2016, Dr. Usha Idnani loaned $155,000 to the Mazel Trust secured by a note and third deed of trust against the Property. Earl signed the note and deed of trust as co-trustee of the Mazel Trust. Earl, individually, also signed an unsecured Personal Guaranty for the loan in the event that the Mazel Trust defaulted. The loan was never repaid.

With the loan in default, Dr. Idnani filed a Guarantor Action against Earl in the Nevada state court and initiated a nonjudicial foreclosure on the deed of trust. A foreclosure sale was set for July 13, 2017.

On May 23, 2017, the Nevada state court entered Findings of Fact, Conclusions of Law and Judgment in the Guarantor Action in favor of Dr. Idnani and against Earl for $199,688.54 (the "Judgment"). The Judgment expressly found that Earl had "waived all equitable defenses in the Personal Guaranty." Prior to entry of the Judgment, Deborah, as co-trustee of the Mazel Trust, executed a quitclaim deed transferring the Property to herself as her sole and separate property without consideration.

---

[1] Because the Seraps have the same surname, we refer to them as "Deborah" and "Earl". No disrespect is intended.

3

**B.     Deborah's bankruptcy case**

Deborah filed a chapter 7[2] bankruptcy case just two days before Dr. Idnani's scheduled foreclosure sale. She received a discharge on October 16, 2017.

**1.     Deborah's motion to expunge lien**

Deborah moved to expunge Dr. Idnani's lien ("Motion to Expunge"), arguing that she had forfeited her security interest in the Property due to her violation of Nevada's one-action rule. As Deborah argued, the one-action rule required Dr. Idnani to foreclose on the collateral first before seeking to recover on the note, and she violated that rule by failing to exhaust her security before pursuing the Guarantor Action against Earl. Consequently, argued Deborah, the violation triggered the sanctions aspect of the one-action rule, causing Dr. Idnani to forfeit her security interest in the Property. In short, once Dr. Idnani obtained the Judgment against Earl, which occurred prior to her completion of the foreclosure sale, her lien was released as a matter of law.

Deborah contended that Nevada's one-action rule applied equally to borrowers and guarantors like Earl. Deborah argued that Earl did not, and could not, waive the protections of Nevada's one-action rule, despite the

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Personal Guaranty, because Dr. Idnani's deed of trust secured an indebtedness for a principal balance that never exceeded the relevant statutory limit of $500,000. Deborah argued that when Dr. Idnani commenced the Guarantor Action against Earl, he had the choice to either: (1) assert the one-action rule as an affirmative defense and force Dr. Idnani to foreclose on the collateral before seeking any personal judgment against him; or (2) decline to assert the one-action rule as an affirmative defense, accept a personal judgment, and allow Dr. Idnani to forfeit her lien. Earl chose the second option. As a result of the Guarantor Action, argued Deborah, Dr. Idnani obtained a personal judgment against Earl and forfeited her lien against the Property. Thus, argued Deborah, because Dr. Idnani had no lien, any security interest she had in the Property must be expunged.

In opposition, Dr. Idnani argued that the sanctions aspect of the one-action rule applied only to borrowers, not guarantors. Because Earl waived his right to any equitable defenses in the Personal Guaranty, argued Dr. Idnani, Nevada law permitted her to pursue the Guarantor Action against Earl separately and independently from her nonjudicial foreclosure action; therefore, neither the Guarantor Action against Earl nor her incomplete nonjudicial foreclosure sale was an "action" which violated Nevada's one-action rule and triggered the sanctions aspect of the rule resulting in loss of her lien. Further, argued Dr. Idnani, the Nevada state

court had already ruled that Earl had waived all equitable defenses to the one-action rule in the Personal Guaranty. Thus, Deborah's arguments to the contrary were barred on the basis of issue preclusion and judicial estoppel. Dr. Idnani argued that she was not trying to collect on the debt twice. To date, she had been unable to collect anything on the Judgment, and now Earl had just passed away, leaving no estate.

In reply, Deborah argued that Dr. Idnani misunderstood the one-action rule, particularly the sanctions aspect of the rule. Although Earl had not invoked the one-action rule as an affirmative defense in the Guarantor Action and waived his right to force Dr. Idnani to foreclose on the collateral before obtaining a personal judgment against him, he did not, as Dr. Idnani contended, waive the sanctions aspect of the rule; that is, that once Dr. Idnani obtained a personal judgment against him, she forfeited her security interest in the Property.

### 2. The bankruptcy court's ruling on the Motion to Expunge

Relying primarily on *Hefetz v. Beavor*, 397 P.3d 472 (Nev. 2017), a recent Nevada Supreme Court case, the bankruptcy court held that, even though Earl did not assert the one-action rule as an affirmative defense in the Guarantor Action, the Judgment against Earl triggered the sanctions provision in NRS 40.435(3), thereby releasing and discharging Dr. Idnani's lien. The court was not persuaded that any estoppel theory applied to the Judgment regarding waiver of Earl's equitable defenses in the Personal

6

Guaranty. Issue preclusion failed because the parties were not the same, and the one-action rule was not litigated in the prior action. Judicial estoppel also failed; Deborah had not taken or prevailed on inconsistent positions in separate actions.

Dr. Idnani timely appealed the bankruptcy court's written order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## III. ISSUES

1.  Did the bankruptcy court err by determining the validity of Dr. Idnani's lien without an adversary proceeding?

2.  Did the bankruptcy court err in applying Nevada's one-action rule?

## IV. STANDARDS OF REVIEW

Whether the correct procedures were followed in determining the issue presented is a question of law we review de novo. *Ung v. Boni (In re Boni)*, 240 B.R. 381, 384 (9th Cir. BAP 1999).

We review a bankruptcy court's legal conclusions and application of state law de novo. *Hopkins v. Cerchione (In re Cerchione)*, 414 B.R. 540, 545 (9th Cir. BAP 2009). In interpreting Nevada law, we are bound by decisions of the Nevada Supreme Court, including reasoned dicta. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). "In the absence of such a decision, a federal court must predict how the highest state court would

decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1239 (9th Cir. 1990).

## V. DISCUSSION

**A.    Any error by the bankruptcy court in determining the validity of Dr. Idnani's lien by motion was harmless**.

Dr. Idnani argues that her lien's validity could only be determined by an adversary proceeding under Rule 7001(2). Dr. Idnani never raised this issue before the bankruptcy court and acknowledged this fact at oral argument. Generally, arguments not raised before the bankruptcy court are waived. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007).

In any case, Dr. Idnani concedes that the record would not have been materially different with an adversary proceeding. Accordingly, any error by the bankruptcy court in determining the validity of Dr. Idnani's lien by motion was harmless. *See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002) (error to circumvent requirement of an adversary proceeding by using a "contested matter" under Rule 9014 is harmless "when the record of the procedurally incorrect contested matter is developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different.").

8

**B.    The bankruptcy court correctly applied Nevada's one-action rule.**

Dr. Idnani argues that the bankruptcy court erred in its interpretation of Nevada's one-action rule as it applies to guarantors. She contends that neither her Guarantor Action against Earl nor her nonjudicial foreclosure was a "judicial proceeding" that violated the one-action rule and would trigger the sanctions provision of NRS 40.435(3)[3], resulting in the release and discharge of her lien. She concedes that if the Judgment had been entered against the borrower — the Mazel Trust — then she would be statutorily barred from seeking further recovery by selling the collateral. However, because the Judgment was entered against Earl, a guarantor, she argues that NRS 40.435(3) does not apply, that her lien was not forfeited, and that the bankruptcy court erred in determining otherwise.

Nevada's one-action rule is found in NRS 40.430 et. seq. It provides, generally, that "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive." NRS 40.430(1). It is best to view the one-action

---

[3] NRS 40.435(3) provides:

(3) The failure to interpose, before the entry of a final judgment, the provisions of NRS 40.430 as an affirmative defense in such a proceeding waives the defense in that proceeding. Such a failure does not affect the validity of the final judgment, but entry of the final judgment releases and discharges the mortgage or other lien.

rule as a "security first" rule. "Under the one-action rule, a debtor can require a creditor to foreclose on real estate security before suing on the note or, if the creditor sues on the note first, force the creditor to lose its security interest." *McDonald v. D.P. Alexander & Las Vegas Blvd., LLC*, 123 P.3d 748, 751 (Nev. 2005). "[T]he purpose behind the one-action rule in Nevada is to prevent harassment of debtors by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt." *Id.*

Violating the one-action rule by bringing an action against the borrower before completing a foreclosure vests in the borrower an "affirmative defense" against the action. Raising the affirmative defense will result, on a motion by any party to the proceeding, in the dismissal of the action without prejudice or the granting of a continuance and order by the court to amend the pleadings such that the action complies with the one-action rule. NRS 40.435(2)(a), (b)[4]; *Hefetz,* 397 P.3d at 475-76.

The borrower may waive the affirmative defense in litigation by failing to timely raise it, but failure to raise it in an action that violates the

---

[4] NRS 40.435(2)provides:

(2) If the provisions of NRS 40.430 are timely interposed as an affirmative defense in such a judicial proceeding, upon the motion of any party to the proceeding the court shall:
(a) Dismiss the proceeding without prejudice; or
(b) Grant a continuance and order the amendment of the pleadings to convert the proceeding into an action which does not violate NRS 40.430.

one-action rule does not result in a waiver of all of the rule's protections and leaves the debtor (or any successor in interest) free to invoke the sanctions aspect of the rule. *Hefetz*, 397 P.3d at 476, 478; *Bonicamp v. Vasquez*, 91 P.3d 584, 587 (Nev. 2004); *Nev. Wholesale Lumber Co. v. Myers Realty, Inc.*, 544 P.2d 1204, 1208 (Nev. 1976), *superceded by statute as stated in Hefetz*, 397 P.3d at 476 n.4; NRS 40.435(3). Should the borrower not raise the defense, and the action proceeds to final judgment, the entry of the final judgment will release and discharge the creditor's lien. NRS 40.435(3); *Hefetz*, 397 P.3d at 476; *Nev. Wholesale Lumber Co.*, 544 P.2d at 1208.

Thus, a borrower in Nevada can use the one-action rule as a shield or a sword. As the Nevada Supreme Court explained in *Hefetz*:

> [T]he one-action rule 'does not provide a complete affirmative defense to a separate personal action on the debt, wherever commenced,' because the one-action rule 'does not excuse the underlying debt.' *Bonicamp v. Vazquez*, 120 Nev. 377, 382-83, 91 P.3d 584, 587 (2004). Instead, the one-action rule prohibits a creditor from 'first seeking the personal recovery and then attempting, in an additional suit, to recover against the collateral.' *Id*. at 383, 91 P.3d at 587. Thus, when suing a debtor on a secured debt, a creditor may initially elect to proceed against the debtor or the security. If the creditor sues the debtor personally on the debt, the debtor may then either assert the one-action rule, forcing the creditor to proceed against the security first before seeking a deficiency from the debtor, or decline to assert the one-action rule, accepting a personal judgment and depriving the creditor of its ability to proceed against the security. NRS 40.435(3); *Bonicamp*, 120 Nev. at 383, 91 P.3d at 587; *Nev. Wholesale Lumber Co.*, 92 Nev.

11

at 30, 544 P.2d at 1208; *see also Keever*, 96 Nev. at 513, 611 P.2d at 1082 ("The right to waive the security is the debtor's, not the creditor's.").

397 P.3d at 476. However, Earl was a guarantor, not a borrower. Dr. Idnani argues that the protections of Nevada's one-action rule, namely the sanctions aspect of it, do not apply to guarantors like Earl. We disagree.

Before 1986, Nevada's one-action rule and its associated protections applied only to borrowers, not guarantors. Suits on guaranties in Nevada were governed by general contract principles, not the foreclosure statutes. *See Thomas v. Valley Bank of Nev.*, 629 P.2d 1205, 1207 (1981); *Mfrs. & Traders Tr. Co. v. Eighth Jud. Dist. Ct.*, 583 P.2d 444, 446 (1978). However, the Nevada Supreme Court's 1986 decision in *First Interstate Bank of Nevada v. Shields*, 730 P.2d 429 (Nev. 1986), revolutionized Nevada guaranty law by overruling *Thomas* and *Manufacturers & Traders Trust* and extending the one-action rule and its associated protections to guarantors. *Shields*, 730 P.2d at 430-31. Since *Shields*, the Nevada Supreme Court has held repeatedly that Nevada's one-action rule applies to guarantors of a debt on a mortgage or other contract secured by an interest in real property. *Badger v. Eighth Jud. Dist. Ct.*, 373 P.3d 89, 94 (Nev. 2016) ("Accordingly, Nevada's deficiency judgment statutes are intended not only to protect borrowers, but to protect guarantors as well.") (citing *Shields*, 730 P.2d at 432); *Lavi v. Eighth Jud. Dist. Ct.*, 325 P.3d 1265, 1268 (Nev. 2014), *superceded by statute on*

12

*other grounds as recognized by Bank of Nev. v. Petersen*, 380 P.3d 854 (Nev.

2016) ("We have interpreted [the one-action rule] to require an obligee, who

seeks to recover a debt secured by real property, to recover on the property

through foreclosure before attempting to recover from the loan's guarantor

personally.") (citing *McDonald*, 123 P.3d at 750).

In 1989, and in response to *Shields*, the Nevada Legislature enacted

NRS 40.495[5], which permits certain types of guarantors to contractually

---

[5] NRS 40.495 provides, in relevant part:

**NRS 40.495  Waiver of rights; separate action to enforce obligation; limitation on amount of judgment; available defenses.**
. . .

(2) Except as otherwise provided in subsection 5, a guarantor, surety or other obligor, other than the mortgagor or grantor of a deed of trust, may waive the provisions of NRS 40.430. If a guarantor, surety or other obligor waives the provisions of NRS 40.430, an action for the enforcement of that person's obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon real property may be maintained separately and independently from:
(a) An action on the debt;
(b) The exercise of any power of sale;
(c) Any action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby; and
(d) Any other proceeding against a mortgagor or grantor of a deed of trust.

(3) If the obligee maintains an action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby, the guarantor, surety or other obligor may assert any legal or equitable defenses provided pursuant to the provisions of NRS 40.451 to 40.4639, inclusive.

(continued...)

13

waive the protections of the one-action rule. *See* NRS 40.495(2); *see also* NRS 40.430(1) (explaining that the one-action rule applies "*[e]xcept* in cases where a person proceeds under subsection 2 of NRS 40.495" ) (emphasis added)). When such guarantor waives Nevada's one-action rule, a creditor may pursue the guarantor before completing a foreclosure without violating the rule. *Lavi*, 325 P.3d at 1268 (citing NRS 40.495(2)). In practice, this allows the creditor to sue the guarantor either before or concurrently with a foreclosure proceeding.

However, by also including in the waiver statute what is now NRS 40.495(5), the Nevada Legislature carved out a special class of guarantors who are unable to contractually waive the protections of the one-action

---

[5](...continued)

. . .

(5) The provisions of NRS 40.430 may not be waived by a guarantor, surety or other obligor if the mortgage or lien:
(a) Secures an indebtedness for which the principal balance of the obligation was never greater than $500,000;
(b) Secures an indebtedness to a seller of real property for which the obligation was originally extended to the seller for any portion of the purchase price;
(c) Is secured by real property which is used primarily for the production of farm products as of the date the mortgage or lien upon the real property is created; or
(d) Is secured by real property upon which:
      (1) The owner maintains the owner's principal residence;
      (2) There is not more than one residential structure; and
      (3) Not more than four families reside.

14

rule. Specifically, with this carve out the Nevada Legislature sought to protect unsophisticated consumers who may not understand the pitfalls of signing boilerplate agreements extending credit in this manner.[6] NRS 40.495(5) invalidates a guarantor's waiver in several situations, such as when the lien secures an indebtedness for less than $500,000. *See* NRS 40.495(5)(a). And, contrary to Dr. Idnani's argument, this exception is not limited to cases involving only a principal residence. *See Lavi*, 325 P.3d at 1271 (Pickering, J., dissenting) (guarantors of "residential, agricultural, or commercial loans" under $500,000 retain the full protection *Shields*). Given that the debt owed to Dr. Idnani never exceeded $500,000, Earl was unable to contractually waive the protections of the one-action rule, including its sanctions provision.[7]

This special class of guarantors like Earl are, essentially, viewed as borrowers, with the same protections of the one-action rule's affirmative

---

[6] *See generally* Legislative History of AB 557, available at https://www.leg.state. nv.us/Division/Research/Library/LegHistory/LHs/1989/AB557,1989.pdf.

[7] Dr. Idnani argues that the Judgment's finding regarding Earl's waiver should be given preclusive effect. Dr. Idnani bears the burden to show that issue preclusion applies to that finding. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) (party seeking to apply issue preclusion bears the burden of proving that it applies). Dr. Idnani has not shown that the finding that Earl "waived all equitable defenses in the Personal Guaranty" means that he waived any right to the one-action rule's sanctions provision, which, arguably, is not waivable in his case and appears to be a legal, not an equitable, defense. Judicial estoppel also has no application here; Deborah has not taken or prevailed on inconsistent positions in separate proceedings.

defense and sanctions provisions. Contrary to Dr. Idnani's argument on appeal, *Hefetz* supports this conclusion. *Hefetz* involved a guarantor of a loan secured by debt on real property. 397 P.3d at 474. The guarantor, Beavor, had signed a personal guaranty, wherein he purported to waive his rights under the Nevada one-action rule. *Id.* However, Beavor was in the special class of guarantors under NRS 40.495(5) who could not contractually waive the protections of the rule. *Id.* at 476 n.3. The creditor, Hefetz, elected to pursue Beavor personally on the loan prior to proceeding against the security. *Id.* Beavor did not assert the one-action rule as a defense. *Id.* Although the issue presented was different than here, the *Hefetz* court found that, while Beavor could indeed waive the affirmative defense provision by not timely raising it despite his inability to contractually waive the one-action rule, he was still entitled to the protections of the sanctions provision of the rule. *Id.* at 476-78.

Once the loan was in default, Dr. Idnani could elect to proceed against Earl or the security. She chose to pursue the Guarantor Action and at the same time proceed with a nonjudicial foreclosure. Earl did not assert the one-action rule as an affirmative defense and therefore waived the right to force Dr. Idnani to exhaust her security. The Guarantor Action proceeded to a final, personal judgment against Earl for the full amount of the debt before the foreclosure proceeding was complete. Once the Judgment occurred, the sanctions provision was triggered and Dr. Idnani's

16

lien was released and discharged under NRS 40.435(3). *Hefetz*, 397 P.3d at 476, 478; *Nev. Wholesale Lumber Co.*, 544 P.2d at 1208 ("The Lundgrens did not assert NRS 40.430 as an affirmative defense and therefore waived the right to force Lumber Company to exhaust its security. . . . When Lumber Company failed to exhaust its security before bringing an action on the underlying debt it placed into operation the sanction aspect of NRS 40.430 and thereby lost all security rights in the real property regarding the debt in question."). To rule that Dr. Idnani could hold a personal judgment against Earl for the full amount of the debt and still be able to sell the collateral would defeat the purpose of the one-action rule and the Nevada Legislature's intent as to guarantors like Earl that there be "but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate." While forfeiting one's lien may be a harsh result, such is the consequence of not complying with the one-action rule.

Dr. Idnani argues that a lien is forfeited under NRS 40.435(3) only when the "final judgment" is entered against the debtor, not a guarantor, based on the language in NRS 40.435(4), which provides: "As used in this section, 'final judgment' means a judgment which imposes personal liability on **the debtor** for the payment of money and which may be appealed under the Nevada Rules of Appellate Procedure." (Emphasis added). The term "debtor" is not defined in Nevada's one-action rule

17

statutes.[8] And, we do not find this statute to be as "clear on its face" as does our dissent; nor do we read it to mean only "borrower" or "primary obligor", two other terms the Nevada Legislature could have used.

While Dr. Idnani's argument has some surface appeal, it would be contrary to NRS 40.495(5) and Nevada case law to interpret the term "debtor" in NRS 40.435(4) to include only borrowers. Earl is in the special class of guarantors and, hence, is treated like a borrower under Nevada law. Further, the *Hefetz* court made clear that the sanctions provision in NRS 40.435(3) extends to a guarantor like Earl. 397 P.3d at 478 ("Thus, NRS 40.435(3) does not conflict with other rules and statutes by prohibiting the waiver of the one-action rule until final judgment, but triggers a definitive waiver at final judgment so that the sanctions portion of the rule can take effect."). Thus, because NRS 40.435(3) includes a guarantor like Earl, it necessarily means that NRS 40.435(4) would have to include Earl as well, despite that provision's use of the word "debtor."[9] We think that the Nevada Supreme Court would agree. The dissent's rationale, which is not supported by Nevada case law and relies almost exclusively on its

---

[8] Black's Law Dictionary defines "debtor" as "[o]ne who owes an obligation to another, esp. an obligation to pay money." *Black's Law Dictionary* (7th ed. 1999). Given the Judgment, Earl clearly meets that definition.

[9] Unfortunately, the legislative history for NRS 40.435 — SB 479 — does not shed any light on the Nevada Legislature's use of the term "debtor" in NRS 40.435(4) or what individuals that may or may not include.

interpretation of NRS 40.495(4) on this issue, eliminates the sanctions protections of the one-action rule provided to the special class of guarantors under Nevada law.

To be clear, our holding extends only to those cases where the guarantor is unable to waive the protections of Nevada's one-action rule, as found in NRS 40.495(5). This issue would not arise in what is the typical scenario: a commercial guarantor who must, and can by law, contractually waive the one-action rule in order to secure necessary financing for the borrower.

We conclude that the bankruptcy court correctly interpreted and applied Nevada's one-action rule. Without her security interest, Dr. Idnani could no longer foreclose and was left only with the Judgment against Earl. That the Judgment may be uncollectible does not change the analysis or the result. Accordingly, the court did not err in granting the Motion to Expunge.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.

Dissent begins on next page.

TAYLOR, Bankruptcy Judge, dissenting.

I dissent.

In this appeal, we confront an issue of first impression under Nevada law: When a creditor obtains a judgment against a guarantor of a debt secured by a trust deed encumbering the debtor's real property, do the Nevada one-action rule statutes, NRS 40.426–40.495 (collectively, the One-Action Rules"), exonerate the debtor's deed of trust?[1] While I acknowledge the quality of the Majority's reasoning, I conclude that the Supreme Court of Nevada would determine that the One-Action Rules do not require trust deed exoneration under these facts. As a result, I would reverse.

## A.    Background Facts and Statutory Overview

**Facts.** I generally agree with the Majority's factual outline but provide a summary for context and emphasis.

A trust (the "Mazel Trust") borrowed money from Dr. Idnani, executed a note evidencing the obligation to repay the loan (the "Note"),

---

[1] The case law and commentary discussing the One-Action Rules use various terms for the primary obligor, the guarantor, and the document creating a lien. For the reader's benefit, and unless the context obviously requires another interpretation: (1) when I refer to "debtor", I mean the party obligated to repay the obligation secured by real property and include parties described as the primary obligor; (2) when I refer to "guarantor", I mean anyone who agrees to pay the obligation of another party and include sureties and other accommodation makers; and (3) when I refer to "trust deed" or "deed of trust", I mean the document creating a lien on real property to secure repayment of an obligation and include mortgages and any other form of voluntary lien.

1

and, to secure the obligations under the Note, provided a deed of trust (the "Trust Deed") on real property (the "Property"). Earl Serap, a residual Mazel Trust beneficiary and successor co-trustee, executed the relevant documents on behalf of the Mazel Trust. Separately, he personally guaranteed the Note's obligations. He pledged no additional collateral.

Eventually, the Mazel Trust defaulted, and, among other things, Dr. Idnani sued Mr. Serap on his guaranty. In that judicial action, Mr. Serap apparently failed to assert defenses and to require protections available under relevant Nevada law, NRS 40.430 and NRS 40.495(4). Dr. Idnani, thus, obtained a judgment against Mr. Serap for what appears to be the full amount owing on the Note (the "Guaranty Judgment"). But due to Mr. Serap's death and the state of his assets, Dr. Idnani could not collect on the Guaranty Judgment.

Dr. Idnani now seeks to collect on the Note through non-judicial foreclosure under the Trust Deed. Deborah Serap, a residual Mazel Trust beneficiary and successor co-trustee, transferred title to the Property to herself and, before Dr. Idnani could foreclose, filed a chapter 7 petition. She argues that the Guaranty Judgment exonerates the Trust Deed under the One-Action Rules. The bankruptcy court and the Majority agreed. I do not.

**Statutory overview.** The One-Action Rules are designed, as the Nevada Supreme Court has recognized, to achieve fairness to all parties in a real-property secured transaction. *First Interstate Bank of Nev. v. Shields*,

102 Nev. 616, 618 (1986). Thereunder, secured creditors receive recovery rights that allow for payment in full, while those obligated to repay the debt obtain protections against over-payment as a result of an excessive deficiency judgment. *Id.*

The antideficiency protections of the One-Action Rules, thus, allow the debtor-defendant in a collection action to assert an affirmative defense and require judicial foreclosure on the real property collateral—this allows the deficiency to be judicially determined. NRS 40.430. Alternatively, the debtor-defendant can decline to assert this affirmative defense and let the case proceed to judgment. In such a case, the creditor obtains a judgment, but entry of the judgment exonerates the trust deed, precluding foreclosure. NRS 40.435(3)–(4). As one court stated, under the One-Action Rules, collection decisions on real estate secured debt are in many ways left to the discretion of the debtor—not the creditor. *Hefetz v. Beavor*, 397 P.3d 472, 476 (Nev. 2017).[2]

_____

[2] The One-Action Rules also protect a debtor in a non-judicial foreclosure setting. Once the non-judicial foreclosure concludes, the creditor is barred from seeking any deficiency unless it complies with specific requirements for deficiency collection. NRS 40.455. As a matter of law, the creditor, thus, must obtain timely judicial valuation of the real property collateral or deemed waiver of its deficiency rights will result.

And the Nevada Supreme Court in *Shields* held that where a creditor cannot collect a deficiency from a debtor, the obligations under any guaranty are exonerated. The decision relies on the general principle of surety law that the liability of a guarantor cannot exceed the liability of the debtor. 102 Nev. at 620 (citing cases from other jurisdictions). So, if a creditor fails to preserve a deficiency claim against a debtor and

(continued...)

3

The One-Action Rules also separately and expressly protect guarantors. *See* NRS 40.465–40.495. First, absent waiver, guarantors have protections under NRS 40.430. *See* NRS 40.495(2). And, where, among other things, the debt never exceeded $500,000, as is the case here, this protection cannot be waived except through inaction during the course of litigation. NRS 40.495(5)(a); *Hefetz*, 397 P.3d at 477–78. Further, guarantors have additional, guarantor-exclusive judicial valuation rights. NRS 40.495(4).[3] Thus, a guarantor—like a debtor—has significant ability to determine the course of collection litigation related to a real estate secured debt.

B.   **Applying rules of statutory interpretation, I conclude that "debtor" does not include "guarantor" in NRS 40.435(4); this requires reversal.**

In NRS 40.435(3), the One-Action Rules require release and discharge of a trust deed following a "final judgment" that does not include a judicial foreclosure action and, therefore, does not include a judicial valuation of the real property collateral. For purposes of NRS 40.435(3), "final

---

[2](...continued)
deemed satisfaction occurs, it also cedes any deficiency claim against any guarantor.

But *Shields*'s reasoning is not applicable here. Payment by a guarantor does not reduce the debtor's obligation; through subrogation, the debtor must now repay the guarantor. The Nevada Supreme Court recognized this reality. One of the reasons it extended exoneration to guarantors was to preserve statutory exoneration of the debtor; otherwise, the guarantor could seek to recover any deficiency claim it paid from the borrower via subrogation and NRS 40.475. *Id.*

[3] This guarantor-specific defense, NRS 40.495(4), was added to the One-Action Rules in 2011. *Bank of Nev. v. Peterson*, 380 P.3d 854, 858 (Nev. 2016).

judgment" is defined as "a judgment which imposes personal liability on the *debtor* . . . ." NRS 40.435(4) (emphasis added). The bankruptcy court and the Majority conclude that the Guaranty Judgment exonerates the Trust Deed because they determine that the word "debtor" in NRS 40.435(4) also means "guarantor" when the creditor cannot obtain pre-litigation waiver of the guarantor's rights under NRS 40.430 and 40.495(2). *See* NRS 40.495(5). It reasons that this class of guarantors is protected by the non-waiver provision and, thus, it must also be protected by the sanction provision. I disagree.

First, a plain language interpretation of NRS 40.435(4) is inconsistent with this result. Second, if the statute is, as the Majority asserts, ambiguous, then application of the rules of statutory construction as mandated by the Nevada Supreme Court does not support the Majority's interpretation. Third, neither case law nor legislative history require or even really suggest a different result.

But the bedrock of my disagreement—if forced to move beyond the statute's plain language—is that the rule they create does not provide invariable protection or benefit to the class they seek to protect. True, it harms creditors significantly and, given its intersection with NRS 40.495(4), unfairly. But guarantors receive no clear benefit. The Majority's rule exonerates liens on property the guarantor does not own and deprives the guarantor of the statutory right to step into the creditor's shoes and to seek

reimbursement of payment on the guaranty from this collateral. The Majority simply and inexplicably ignores that its rule may harm its protected class. I cannot agree that the Nevada Legislature intended this unstated detriment to what the Majority calls a "special class of guarantors." As such, I disagree with the Majority's conclusion.

### 1. Under the plain language of the statute, a guarantor is not a debtor.

Where a statute is clear on its face, a court's analysis should cease. *Hefetz*, 397 P.3d at 475; *Beazer Homes Nev. Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579–80 (2004). *See also Eggleston v. Costello (In re Estate of Thomas)*, 116 Nev. 492, 495 (2000) ("It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act.") (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 648 (1986)).

NRS 40.430(1) governs actions to recover a "debt" secured by a "mortgage or other lien" on real property. And NRS 40.435(3) and (4) provide that a final judgment against the "debtor" releases and discharges the "mortgage or other lien." The statutes unambiguously identify the act allowing exoneration of a trust deed as a judgment against the party obligated on the real property secured debt.

Here, the debt secured by real property is the loan to the Mazel Trust, which is evidenced by the Note, and the debtor obligated on the Note is the

6

Mazel Trust. A plain language interpretation, thus, requires a final judgment on the Note against the Mazel Trust before the Trust Deed is exonerated; this makes clear that the Guaranty Judgment against Mr. Serap did not exonerate the Trust Deed under NRS 40.435(3).

Because the statute is clear on its face, my analysis would, ordinarily, stop here. *Hefetz*, 397 P.3d at 475. But, as the Majority disagrees, I proceed to other rules of interpretation the Nevada Supreme Court endorses.

### 2. The One-Action Rules carefully distinguish between the terms "debtor" and "guarantor."

The Nevada Supreme Court cautions that, where a statute expressly uses a term in a statutory scheme, we should not assume it is included where the statute is silent. *Dezzani v. Kern & Assocs., Ltd.*, 412 P.3d 56, 59 (Nev. 2018) ("Generally, when the [L]egislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.") (quoting *Coast Hotels & Casinos, Inc. v. Nev. State Labor Comm'n*, 117 Nev. 835, 841 (2001)). In *Dezzani*, the Nevada Supreme Court held that an attorney was not an agent for purposes of a statutory provision because the statutory scheme used "an agent or an attorney" in one context but just "an agent" in the provision at issue. *Id*. It was thus improper to assume the inclusion of an attorney providing legal services in the second statutory context.

The One-Action Rules separately discuss the rights of debtors (*i.e.,*

7

NRS 40.430–40.435) and guarantors (*i.e.*, NRS 40.465–40.495). And, as in *Dezzani*, they specify where multi-party applicability is appropriate by expressly naming both debtors and guarantors. *See, e.g.*, NRS 40.459(1) ("After [a deficiency determination hearing], the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt."). Given the careful differentiation between the rights of debtors and the rights of guarantors throughout the One-Action Rules, I conclude that interpreting NRS 40.435(4) as meaning both debtor and guarantor, when the statute refers only to debtor, violates a customary rule of statutory interpretation. The Nevada Supreme Court would not ignore this rule.[4]

---

[4] *Dezzani* also shows why the Majority's invocation of Black's Law Dictionary is misplaced. Mr. Serap, the Majority states, clearly meets the definition of "debtor" because he owes an obligation to Dr. Idnani by virtue of the Guaranty Judgment. This mirrors the argument by the lone dissenting justice in *Dezzani*: "Etymologically and by definition, the word 'attorney' means 'agent.'" *Id.* at 65 (Pickering, J., dissenting). The *Dezzani* majority opinion rejected this interpretation, however, because it was contrary to the plain language of the statute and overlooked the "Legislature's distinct use of the term 'agent' when intending to address matters concerning agents and not attorneys." *Id.* at 60 (majority opinion). This also rings true in this appeal. True, Mr. Serap owed Dr. Idnani money and was thus, by dictionary definition, a debtor—but it is not because he was the original debtor liable on the real property secured Note, it is because he guaranteed payment on the Note. Within the statutory scheme of the One-Action Rules, he is not a debtor.

### 3. The One-Action Rules create a coherent statutory scheme that protects guarantors from overpayment on a guaranty and provides subrogation rights allowing payment recovery from the debtor.

We must construe a statutory scheme as a whole. *State v. Tatalovich*, 129 Nev. 588, 590 (2013); *Leven v. Frey*, 123 Nev. 399, 405 (2007); *City Plan Dev., Inc. v. Office of Labor Comm'r*, 121 Nev. 419, 434 (2005); *cf. Hefetz*, 397 P.3d at 475. Appropriate statutory interpretation also requires avoiding, first, an interpretation that leads to an absurd result, *Tatalovich*, 129 Nev. at 590, *Leven*, 123 Nev. at 405, *City Plan Dev., Inc.*, 121 Nev. at 435, and, second, an interpretation that renders a clause meaningless or mere surplusage, *Hefetz*, 397 P.3d at 475, *Eggleston*, 116 Nev. at 495. When I apply these customary canons of statutory interpretation, as the Nevada Supreme Court would, I determine that the coherence of the statutory scheme collapses if, as the Majority suggests, we include a guarantor that did not provide real property collateral for the debt within the term debtor as used in NRS 40.435(4).

**My interpretation preserves a guarantor's subrogation rights.** The One-Action Rules expressly subrogate a guarantor to the rights of the creditor when it fully or partially satisfies a real-estate secured obligation. *See* NRS 40.475 & 40.485. And this subrogation includes the ability to enforce rights that "the creditor then has by way of security for the performance of the indebtedness." NRS 40.475. This provision is undercut

by the Majority's reasoning. Under their interpretation, a guarantor loses entitlement to the creditor's collateral rights if it fails to require judicial foreclosure.

Here, to the extent Mr. Serap paid on the Guaranty Judgment, he would have the right to seek payment from the Mazel Trust as he is expressly subrogated to Dr. Idnani's payment rights. But if the Majority's theory of deemed exoneration is correct, he would no longer have any direct rights to enforce the Trust Deed and foreclose on the Property—the only collateral for the loan. The Mazel Trust, freed from the Trust Deed by deemed exoneration, would have the unfettered ability to place the Property beyond his reach through additional encumbrance against any equity. And through title transfer, it could make collection through foreclosure on this critical asset difficult and perhaps impossible.

Even if one could rationalize this result as to Mr. Serap, one must acknowledge that not all transactions involve a single guarantor. If the Majority's rule is the law, a single guarantor's waiver of the affirmative defense of NRS 40.430 during litigation will exonerate the trust deed on the debtor's collateral and deprive all other guarantors of NRS 40.475's remedies.

Given this result, I cannot agree that the Nevada Supreme Court would include the word "guarantor" in NRS 40.435(4).

**My interpretation gives meaning to NRS 40.495(4) and avoids an**

10

**absurd result.** The Majority focuses on NRS 40.430 and NRS 40.435, which provide protections available to all debtors and, if not waived, protection to guarantors. But they completely ignore NRS 40.495(4) which provides similar protections to all guarantors.

NRS 40.495(4) does not allow a guarantor to compel judicial foreclosure of the real property collateral; that right arises under NRS 40.430 and, indirectly, NRS 40.495(2). Instead, it provides an alternative, guarantor-specific method for valuing real-property collateral and eliminating the risk of overpayment on a guaranty. Unless the creditor already foreclosed on the collateral and reduced the debt by its value, when the creditor sues on a guaranty, the court must hold a valuation hearing and cannot render a judgment on the guaranty in an amount greater than the amount owed on the debt less the value of the collateral. NRS 40.495(4).[5]

---

[5] The Majority worries that allowing Dr. Idnani to hold a judgment against Mr. Serap for the full amount of the debt while also allowing Dr. Idnani to foreclose on the collateral now owned by Ms. Serap as a result of a transfer from the Mazel Trust would "defeat the purpose of the one-action rule . . . ." Although I acknowledge what happened in Mr. Serap's case, it was not what NRS 40.495(4) contemplates. Its mandate is directed to the trial court, I have no explanation for the trial court entry of judgment in the full amount. The protections of NRS 40.430 are waivable. *Hefetz*, 397 P.3d at 475–76. So, perhaps, the provisions of NRS 40.495(4) are also waivable. *See id.* at 476 (discussing ability to waive statutory affirmative defenses generally). *Hefetz* involved a different issue, but its discussion of waiver seems applicable, and the trial court in the action against Mr. Serap noted waiver in its decision. But, in any event, bad facts should not lead to bad law—particularly where those bad facts may result from misapplication

(continued...)

11

Given this mandate, the One-Action Rules create a statutory scheme where all guarantors can assure that any judgment on the guaranty is reduced by the value of the real property collateral without requiring judicial foreclosure. *See* NRS 40.495(4). And, as I read the One-Action Rules, this is fair and consistent with the recognized right of the creditor to be paid in full because the collateral remains available to the creditor. *Shields*, 102 Nev. at 618. But the Majority's view creates a different, unfair, and hence absurd, result; it requires exoneration of a creditor's collateral trust deed concurrent with entry of a judgment in an amount that presumes that foreclosure under the trust deed remains possible.

The Majority ignores NRS 40.495(4). In so doing, it creates a result at odds with the elegant statutory scheme. Nowhere do the One-Action Rules require foreclosure before action on a guaranty. Indeed, NRS 40.495(4) contemplates that an action on a guaranty may commence before foreclosure but conclude after foreclosure. *See Peterson*, 380 P.3d at 848 ("But, until it was amended in 2011, NRS 40.495 did not include its own fair value provisions to apply when, after bringing suit against its guarantor, the lender foreclosed on the property securing the guaranteed debt."). But if the Majority's view is correct, NRS 40.495(4) is a trap for the unwary. I do not believe the Nevada Supreme Court would read an unstated term into

[5](...continued)
of the law or the mistakes of a pro se litigant.

12

NRS 40.435(4) given this result.

### C. The Majority's decisional approach is flawed.

The Majority engages in none of the statutory interpretation just discussed. It ignores the plain language of NRS 40.435(4) and the One-Action Rule's careful differentiation in the use of "debtor" and "guarantor"; it also fails to consider the statute as a whole. Instead, it relies on considerations based on one of the several policies that underlie the One-Action Rules, a recent Nevada Supreme Court decision, *Hefetz*, and a small portion of legislative history discussing one of the policies underlying the statute.

The Majority reasons as follows: in *Shields*, the Nevada Supreme Court held that guarantors are protected by the One-Action Rules; the Nevada legislature has amended the One-Action Rules to create a "special class of guarantors" who cannot waive the One-Action Rules; this "special class of guarantors" are treated more like debtors, as confirmed by *Hefetz*; and, as a result, this "special class of guarantors" are included when NRS.435(4) refers to "debtor." I find this reasoning suspect; it is not "plain" in any event.

**Policy.** The Majority's focus on policy considerations and the "special class of guarantors" who cannot waive the One-Action Rules is misplaced. I agree; some guarantors cannot waive the One-Action Rules—at least outside litigation. And Mr. Serap is one of those guarantors. The ultimate

13

issue, however, is not whether Mr. Serap is a NRS 40.495(5) guarantor who could not waive NRS 40.430's provisions. Instead, it is about how NRS 40.435(3) operates. And because the Majority fails to discuss, or even cite, NRS 40.495(4), it fails to consider that the critical ability to reduce a deficiency judgment by collateral value is available to all guarantors—not just the "special class."

It also fails to take into account that debtors—not guarantors—benefit from the rule it adopts. It is a lien on the debtor's collateral that is exonerated. How does this aid or protect a guarantor? And it is the guarantor's right to collect through a subrogated right to collateral that is destroyed. Why does this not harm the guarantor? If the policy they rely on requires an interpretation that is favorable to a "special class of guarantors," their rule fails to meet the policy's goals.

While I acknowledge that Ms. Serap (Mr. Serap's widow) benefits as a result of the rule created by the Majority and while the Majority is understandably sympathetic to her position, this is a unique case. I fear the Majority misapprehends the facts. In particular, Ms. Serap owns the Property not as a result of a transfer from Mr. Serap, a guarantor, but as a result of a transfer from the Mazel Trust, a debtor. So a typical guarantor in their "special class" would not benefit as Ms. Serap does because the typical debtor would not voluntarily transfer real property collateral to a guarantor either before or after lien exoneration. The Majority's rule would

14

not benefit Ms. Serap outside the highly unusual facts of this case. And as a general and usual matter it will harm their "special class of guarantors." This point leads to a final absurd result: guarantors outside the protected class have all the antideficiency protections of the One-Action Rules, with the exception of NRS 40.430, if waived, and they are not subject to a potential loss of collateral subrogation rights in any scenario. To my mind, if the Majority's rule is the law, then the Majority's "special class" fares less favorably than other guarantors.

*Hefetz*. The Majority relies on the Nevada Supreme Court's recent decision in *Hefetz*, 397 P.3d 472. But *Hefetz* does not support the Majority's decision. I am not troubled by the conclusion in *Hefetz*: NRS 40.495(5)'s nonwaiver provisions must be "timely interposed as an affirmative defense in a party's responsive pleadings or it is waived." *Id.* at 474. And I agree with *Hefetz*'s analysis in all respects.

The Majority and I disagree about *Hefetz* because the Majority reads it as a case about a guarantor's rights while I do not. *Hefetz*, in the main, is a civil procedure case. To the extent it involved a difficult One-Action Rules issue, it resolved the tension between NRS 40.435(2) and (3). In *Hefetz*, an LLC borrowed funds to develop a commercial project. *Id.* Beavor, an individual, separately signed a personal guaranty and also pledged his personal residence as security. *Id.* The commercial project failed, and the lender's assignee filed suit to recover on the personal guaranty contract

15

from Beavor; he finally interposed the One-Action Rules as a defense on the eve of a second trial in the case. *Id.* at 475.

The Nevada Supreme Court determined that waiver in the context of litigation was possible notwithstanding the statutory prohibitions on waiver in NRS 40.495(5)(d)(1). *Hefetz* never addresses the exoneration of a trust deed provided by the debtor in any way; it cannot do so because the "guarantor" (Beavor) pledged the real property collateral at issue. Put differently, although Beavor was a *guarantor* on the commercial project, he also was the *trustor* of the collateral deed of trust.[6] In fact, *Hefetz* did not involve a consideration of foreclosure rights. *Id. passim.* To the extent the case involves the observation that trust deed waiver would follow a failure to assert the affirmative defense, the observation is *dicta*, true in many contexts, and irrelevant to the issue directly raised in this appeal. And the final point is particularly true as our appeal does not involve a guarantor who is also the trustor of the real property collateral.

Having dispensed with the Majority's use of *Hefetz*, I note the lack of

---

[6] And while it is not crystal clear, because the issue was not before the Nevada Supreme Court in *Hefetz*, it is probable that the trust deed secured the guaranty. The Nevada Supreme Court in *Hefetz*, refers to the debt as being secured both by Beavor's home and his guaranty. This strongly suggests that the trust deed secured the guaranty. *See also* Respondent Christopher Beavor's Answering Brief on Appeal at 3, *Hefetz v. Beavor*, 397 P.3d 472 (Nev. 2017) (No. 70327), 2016 WL 9000852, at *3. If that is the case, the secured debt was the guaranty and the guarantor on the secured obligation was the debtor within the meaning of NRS 40.435(4) as I interpret the statute.

any other Nevada caselaw expressly adopting the Majority's position.[7]

**Legislative history.** Given the statutory analysis I have laid out, I do not believe that recourse to legislative history is appropriate. *Pawlik v. Shyandg-Fenn Deng*, 412 P.3d 68, 71 (Nev. 2018). But as the Majority brings it into the debate, it is worthwhile to note that the legislative history they cite, relating to the enactment of the guarantor provisions of the One-Action Rules, clearly contemplates that a guarantor's subrogation rights, including the right to proceed under a collateral trust deed, would survive an action on a guaranty.[8] And for this to be the case, the trust deed cannot

---

[7] I also acknowledge that I have no case under the One-Action Rules supporting my view directly; again, this is an issue of first impression. But the Majority incorrectly states that I do not rely and cite controlling Nevada authority. To the contrary, I cite extensive Nevada Supreme Court authority outlining the appropriate method for construing a statute; I then follow it.

[8] Nevada Assembly Bill Number 557 passed the State Assembly, but was subsequently amended by the Nevada Senate and thus returned to the Nevada Assembly. At the hearing on the amendment, a representative of the Nevada Bankers' association explained:

> Continuing, Mr. McElroy explained the bill, before the Senate amendments, would have provided that a guarantor would have to live up to the agreement, whatever that was, and, therefore, would have to waive the protections of both the "one-action rule" and the "fair value" legislation. In the senate, Mr. McElroy indicated, there was discussion and concern about the potential for double recovery. So, what had been decided was to allow the "fair value" legislation to continue for guarantors. The only protection remaining to waive was the "one action rule." What this would mean in practice, was that once there was default under a loan secured by real property, the lender could sue the guarantor

(continued...)

17

be exonerated when a final judgment is entered against a guarantor. In my view, legislative history, if considered, supports reversal.

* * *

In sum, the Majority's result is not supported by the rules of statutory interpretation mandated by the Nevada Supreme Court and does violence to the carefully balanced One-Actions Rules. Conflating the terms "debtor" and "guarantor" in NRS 40.435(4) merely provides a windfall for *debtors* who already enjoy carefully articulated statutory protections. The Majority ignores that its rule actually hinders guarantor protection, relies on a case that does not involve the issue here, and overlooks legislative history that does not support their position. I disagree with this reasoning.

### D.    Conclusion[9]

---

[8](...continued)
immediately, and choose never to foreclose. If the guarantor then paid off the lender, the guarantor would have the rights against the original debtor which the bank had in the first place. It did allow the bank to sue a guarantor immediately and not force it to go after the security. . . . Therefore, basically the bill allowed a lender to go directly after a guarantor, but if a foreclosure ever occurred, they would have to be given fair value. Thus, there was no possibility of double recover.

Hearing on A.B. 557 Before the Assembly Committee on Judiciary, 1989 Leg. (Nev. June 16, 1989), https://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/1989/AB557,1989.pdf.

[9] If Mr. Serap and the Mazel Trust were coextensive such that the guaranty would be called a sham under California caselaw, *see, e.g.*, *Torrey Pines v. Hoffman*,

(continued...)

For the reasons stated, I conclude that the Nevada Supreme Court would find that a judgment on a guaranty does not exonerate a trust deed provided by the debtor as collateral for its debt. The Majority concludes with the assertion that this issue will not arise in a typical commercial transaction—perhaps this is true. But I am certain that, when the rule they insist on applies, it will harm both creditors and, in the main, their "special class of guarantors." The Majority hopes to benefit their protected class, but their rule benefits only debtors and their successors in interest like Ms. Serap. As a result, I would reverse.

---

[9](...continued)
231 Cal. App. 3d 308 (1991), I conclude that the Nevada Supreme Court would likely affirm for that reason. If that were the case, I would concur in the result. Facially, the facts hint at such a result: the case involves a revocable estate planning trust. I have identified no Nevada decision recognizing the "sham guaranty" concept. But as the Ninth Circuit has noted: "[Nevada] courts have looked to the law of other jurisdictions, particularly California, for guidance. *See, e.g.*, *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1281–82 (1995); *Dutt v. Kremp*, 111 Nev. 567, 894 P.2d 354, 358 (1995). In accordance with this practice, we have looked to the law of other states when necessary to supplement [Nevada law]." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996). And here, the guaranty contains a California choice of law provision.

But here, Mr. Serap was not the trustor and the estate planning trust was apparently created by his mother to aid in disposition of her assets. And while the Mazel Trust may have been revocable during his mother's lifetime, review of the trust documents in the record supports that this is no longer the case as Mr. and Ms. Serap appear to act or have acted as residual beneficiaries and successor co-trustees; they were entitled to do so only on the Trustor's death. Ms. Serap did not argue that Mr. Serap had liability for the debt of the Mazel Trust absent the guaranty. In short, I cannot affirm on this alternate basis.